GARRETT W. LOW AND JASPER C. GATES, ADMINISTRATORS
   OF THE ESTATE OF OLIVER C. HILL, DECEASED, v.
          ALFRED J. MILLS, CIRCUIT JUDGE.

*Chancery practice—Enrollment of decree—Requisites of—Opening after enroll-
   ment—May be on petition, if entered for want of appearance—Otherwise
   only on bill of review—Subpœna—Service of—Return not conclusive—
   Misstatement of return-day in copy served, an irregularity—Does not
   render service void—May be taken advantage of by timely application to
   the court—Return showing regular service gives the court jurisdiction,
   though false—Discretion in setting aside service and subsequent proceed-
   ings—When improperly exercised—[See head-note 5] "Rents and Pro-
   fits"—Mortgagee in possession must account for before commissioner,
   and apply net amount on mortgage debt—Action at law—Entering
   default for non-appearance — Affidavit must be filed—Good practice
   requires same showing in chancery case—But omission of not error.*

1. To constitute an enrollment of the decree and proceedings in a cause,
   under How. Stat. §§ 6648-9, the papers must be *attached* together,
   with the register's certificate *annexed* under the seal of the court, and
   *filed* in his office.

2. A *pro confesso* decree made for *want* of the defendant's *appearance* may
   be vacated by the court *after* enrollment, upon petition or motion;
   but the rule is otherwise where an appearance has been entered.
   In such case a re-examination of the case can be had only on bill of
   review. *Maynard v. Pereault,* 30 Mich. 161.

3. A chancery subpœna was returned by the sheriff as served by deliver-
   ing a true copy to the defendant and exhibiting to him the original,
   with the seal of the court impressed thereon; but it appeared after
   decree that the return-day specified in the copy was of a date thirty
   days *prior* to that fixed in the original subpœna.
      *Held,* that the return was not *conclusive* against the defendant, nor
   was the service *void*; but that the defect was an irregularity of which
   he *might* take advantage by timely application to the court.

4. The return of service of an officer may be set aside, under certain
   circumstances, upon sufficient *cause* shown in the same proceeding;
   but where the return shows the service to have been *legal* and *regu-
   lar*, although false, it gives the court jurisdiction.

5. The return-day of a chancery subpœna was misstated in the copy
   served, but the defendant was not misled thereby. He, however,
   allowed a *pro confesso* decree to be entered for want of an appear-

ance, for the amount reported due on the mortgage by the commissioner, and the mortgaged premises to be advertised for sale; and then applied to the court to set aside the service of the subpœna for the defect stated, and all subsequent proceedings in the suit. He failed in his petition to show that he was ignorant of the *true* return-day, or that he would have appeared had the service been regular, and made no showing of merits nor tendered his proposed answer. The only grievance alleged was the failure of the complainants to account for the rents and profits of the mortgaged premises before the commissioner, and have the same applied upon the amount found due on the notes and mortgage. The circuit judge granted the relief asked for.

*Held,* that under the circumstances presented in the record, no facts existed authorizing the exercise of judicial discretion in setting aside the *service* of the subpœna or the order *pro confesso,* and a *mandamus* was granted to vacate so much of the order as granted *this* relief.

6. A mortgagee, in his lifetime, and his administrators, after his death, controlled the mortgaged premises, enjoying the rents and profits thereof. The mortgage was foreclosed by the administrators, and a *pro confesso* decree taken against the mortgagor, for want of an appearance, for the full amount due on the mortgage, no accounting being made for such rents and profits, which were in excess of the necessary expenses of carrying on the farm.

*Held,* that an order *made* by the circuit judge, vacating the commissioner's report of amount due and the decree, was warranted, although it might have been justly refused on account of the defendant's laches, which were not excused [see head-note 5 for statement of facts]; but that the further order directing the defendant to enter his appearance was unwarranted, and a *mandamus* was granted vacating the same.

*Held,* further, that it was the duty of the complainants to have accounted for said rents and profits before the commissioner, and to have applied the *net* amount on the mortgage debt; and an order of reference was directed accordingly.

7. In a suit at law, where service of notice of retainer is equivalent to an appearance, which facts the record *might* not disclose, an affidavit showing defendant's non-appearance is essential to a regular entry of his default for want thereof.

8. While good practice *may* require the filing of an affidavit of non-appearance in a chancery case before entering an order *pro confesso* for want thereof, it is not *essential,* and its omission is not error. If entered, the record in the case must disclose the fact.

Mandamus to vacate order setting aside service of subpœna and subsequent proceedings in foreclosure case.

Argued April 13, 1886. Partially granted April 20, 1886. The facts are stated in the opinion and head-notes.

*Fraser & Gates,* for relators.

*Henry F. Severens,* for respondent.

[No briefs furnished.—REPORTER.]

CHAMPLIN, J. Relators file their petition, and ask for a *mandamus* to compel the circuit court for the county of Kalamazoo to vacate an order made upon the chancery side of the court, based upon the petition of the defendant, setting aside and vacating a decree in the cause above entitled, and all proceedings therein subsequent to the issue of the subpœna. The showing made by the defendant, Hill, in his petition was as follows:

1. That on January 28, 1885, complainants filed their bill to foreclose a mortgage executed by defendant to secure the payment of five promissory notes payable to Oliver C. Hill on demand, aggregating $4,340; that complainants issued a subpœna on the twenty-ninth day of January, 1885, returnable February 12, 1885, directed to him; that no true copy thereof was served upon him, but the copy served was returnable January 12, 1885.

2. That on March 6, 1885, an order was entered in the cause taking the bill of complaint as confessed for want of appearance, and referring the cause to a circuit court commissioner to compute the amount due complainants upon the mortgage and notes; that he is informed and believes that no affidavit of non-appearance of defendant was filed preliminary to the entry of the order.

3. That the bill filed to foreclose the mortgage sets up and states that from the time of the execution of the mortgage to the death of Oliver C. Hill the mortgagee remained in possession of a portion of the lands, and after his death the heirs-at-law, except himself, and the widow, have continued in possession until October 3, 1883, and since that time complainants, as administrators, have remained in possession.

4. That he has never had possession of the mortgaged premises since the execution of the mortgage; that on April 3, 1883, said heirs filed a bill against defendant, setting up that the title of defendant to said lands was fraudulent and

void, and the deed to him was false and forged; that he was enjoined from selling or disposing of the land; that on or about January 14, 1885, said bill was dismissed by the decree of the Supreme Court.

5. That said Oliver C. Hill, from the execution of the mortgage until his death, and since, the complainants, received the entire income of said lands, the rental value of which was worth $400 per annum.

6. That on the thirteenth of March, 1885, the commissioner reported the amount due upon the notes and mortgage, $5,303.75; that no testimony was taken on the reference either as to payments or of the rents and profits, and no account thereof was taken in ascertaining the amount due.

7. That no demand was made upon him for payment of said notes until January 23, 1885, and then no notes were produced, but at that time the notes were on file in the office of the register of the court of chancery at Kalamazoo, as part of the testimony and files of the former suit, and were never presented to him for payment; that by the terms of the mortgage, as he is advised, no foreclosure of the same could be instituted until the expiration of sixty days after demand.

8. That a final decree was entered March 13, 1885, for sale, and fixing amount due at $5,303.75.

9. That he had no notice or knowledge that said complainants had caused a computation to be made of the amount due on said mortgage without taking into account the rents and profits of said lands, with which he should be credited until about March 3, 1886, after he learned the premises had been advertised for sale.

10. That for the past year and a half he has been obliged to be absent from Kalamazoo the greater part of the time to attend to his business; that he has been embarrassed financially, which was caused almost wholly by the expense incurred by the litigation before mentioned, and the action of the parties in unjustly and illegally detaining and depriving him of the possession and benefit of said lands.

His prayer for relief is as follows:

"Your petitioner therefore prays that an order may be made in said cause setting aside and vacating the return of service of the subpœna in this cause upon your petitioner; and also setting aside and vacating the order taking said bill of complaint as confessed, and referring it to said commissioner to compute the amount due on said mortgage; and

also setting aside and vacating the report of the amount due upon said promissory notes and mortgage; and also setting aside and vacating the decree made in said cause; and your orator further prays that your petitioner may have such other relief in the premises as shall be agreeable to equity and good conscience."

The court issued an order to show cause why the prayer of this petition should not be granted. Complainants showed cause by affidavits to the effect, as far as it had any bearing upon the motion, that the estate for which they were administrators owed debts, and the only assets were the notes and mortgage in question; that the rents and profits exceeding the necessary outlays and taxes did not amount to more than $100; that defendant was otherwise indebted to the estate in a large amount, exceeding $1,000, and, he being insolvent, they had the right to apply the rents and profits upon such other indebtedness; and, by proofs taken upon the hearing, they showed that he was aware of the foreclosure proceedings, and shortly after the commissioner had reported the amount due he was informed by the commissioner that he had made a report of the amount due upon the mortgage, and defendant then said: "I shall show them a trick some day." This was within a month of the time the report was made.

The files in the case were referred to in, and made a part of, defendant's petition, from which it appears, by the return of the sheriff indorsed on the original subpœna, and returned and filed on the thirtieth day of January, 1885, that he personally served upon the defendant the subpœna by delivering to said defendant, at the city of Kalamazoo, in said county, a true and compared copy of the subpœna, inscribed "Copy," and subscribed by Elisha D. Frazer, complainant's solicitor; and the same time he showed said defendant the original subpœna, with the seal of the court impressed thereon.

The files did not show that an affidavit of non-appearance had been filed before the order *pro confesso* was entered, but did show that such order was based upon the return of the sheriff. The files also showed that on the fifteenth day of

April, 1885, the complainants filed a written *præcipe* to request the register to enroll the decree. The return of the circuit judge states that the decree was not in fact enrolled. The petitioner also, by reference, made the files and records of the suit by the heirs, to have the deed of said land to defendant set aside and declared null and void, a part of his petition.

The circuit judge, upon the hearing,—

"Ordered, adjudged, and decreed that the prayer of the petition be, and the same is hereby, granted; and that the return of the service of subpœna issued in this cause upon the defendant, Robert F. Hill, and all proceedings subsequent thereto, be, and the same is hereby, vacated and set aside; and it is further ordered, adjudged, and decreed that this order shall not take effect and become operative until the twentieth day of April, A. D. 1886; and that in the meantime no sale be made under the decree in this cause, which is hereby set aside and vacated, but that the sale advertised thereunder may be continued and adjourned until the twentieth day of April, A. D. 1886; and it is further ordered and decreed that the said defendant, Robert F. Hill, cause his appearance to be entered in said cause within 30 days after the order becomes operative."

The relators contend that this order is unauthorized, and that this Court should issue its mandate to the circuit court of Kalamazoo county to compel that court to vacate such order upon the following grounds:

1. That the court below had no jurisdiction to vacate the decree on petition of defendant, under the facts and circumstances of this case; that the *præcipe* for enrollment filed on the fifteenth day of April, 1885, operated as an enrollment of the decree.

2. If otherwise, and if the opening of the decree was a matter in the discretion of the court, yet no facts existed which authorized the exercise of such discretion.

What shall constitute an enrollment of a decree and proceedings in a cause, and when the enrollment shall be deemed to be perfected, is regulated by sections 6648 and 6649 of Howell's Statutes. From these sections it is clear that the request to the register to enroll the decree and proceedings

does not have the effect of enrollment. It is not until the papers are attached together, and the required certificate of the register, under the seal of the court, annexed, and filed in his office, that the decree and proceedings are deemed to be enrolled.

Authorities are not wanting, however, to support the authority of the court to vacate a decree in a cause where the bill has been taken as confessed upon petition or motion after enrollment, for proper cause shown: *Millspaugh v. Mc-Bride*, 7 Paige, 509; *Kemp v. Squire*, 1 Ves. Sr. 205; *Beekman v. Peck*, 3 Johns. Ch. 415; *Erwin v. Vint*, 6 Munf. 267; *Tripp v. Vincent*, 8 Paige, .176. It is otherwise when the bill has been taken as confessed after appearance: *Maynard v. Pereault*, 30 Mich. 160. It was said by the chancellor, in *Russell v. Waite*, Walk. Ch. 31, that "no general rule can be laid down by the court to govern it in applications of this kind. Each application must depend, in a great measure, upon its own facts and circumstances, and the sound discretion of the court. A decree regularly obtained against a party, by default, should not be opened, unless under special circumstances, and then only to promote justice."

Was this decree regularly obtained? The relators insist that the return of the sheriff is final and conclusive against the defendant; that it was an official act, made under the sanction of an oath, and is entitled to equal verity, at least, as defendant's oath contradicting the return. On the other hand, the defendant insists that the service of a copy of the subpoena which is not a true copy, in that the return-day was stated in the copy to be the twelfth of January instead of the twelfth of February, was not merely an irregularity, but a void service, and the court never obtained jurisdiction of his person.

Both grounds are untenable. The return of an officer, under certain circumstances, may be set aside upon sufficient cause shown in the same proceeding. Where the service appears from the return to have been legal and proper, although false, it is sufficient to give the court jurisdiction.

In this case the service was not wholly void. The original subpœna, which was without defect, was exhibited to the defendant, with the seal of the court impressed thereon.

In *Creveling v. Moore,* 39 Mich. 563, which was a foreclosure suit in which there had been a decree *pro confesso* entered May 26, 1877, a petition was filed May 1, 1878, to set the decree aside on the following grounds:

1. The subpœna issued and served upon them was signed by the deputy register in his own name, and not in the name of his principal.
2. That by the subpœna the defendants were called to answer the bill of complaint of "Nelson Creveling, of Minnie J. Boudman," whereas the decree is in favor of "Nelson Creveling, *guardian* of Minnie J. Boudman."
3. That the copy of subpœna served upon them was not subscribed by the complainant or his solicitor, or by the officer serving the same, as required by the rules of court.

The Court said: "The defects were mere irregularities, and if the defendants desired to take advantage of them they should have moved promptly. After the lapse of time appearing in this case, such objections are not to be listened to."

In *Johnson v. Shepard,* 35 Mich. 115, where a sheriff, by a manifest clerical error, certified that he had served a subpœna on a day before it was dated and issued, the defendant, after decree, applied for leave to file a bill of review. The Court said the defect relied upon was not well founded in fact, and such a slip would have given no very strong support to an appeal to the discretion of the Court.

A case in point is that of *Gould v. Castel,* 47 Mich. 604. In this case a subpœna was issued in due form, and returned with regular proof of personal service. The copy served on defendant was not a true copy, as it contained no return-day whatever. Defendant, however, allowed complainant to go on and take a decree *pro confesso* on the first of July, 1880. On the eighteenth of December following he moved in person to vacate the proceedings subsequent to the bill and issue of the subpœna, on the ground that the copy of the subpœna contained no appearance-day. He made no showing of

merits, nor tendered any answer.[1] Neither did he suggest any excuse or explanation for his delay. The Court said : " We think the defendant was guilty of gross laches, and was in fault in lying by, and not moving on his own contention in regard to the defect of the process." The Court was further of the opinion that the defect in the copy of the subpœna was not made out, and that the weight of the evidence was the other way.

In this case the defect in the copy served was an irregularity which the defendant might have taken advantage of by timely application to the court. But he was not misled. He is an attorney and solicitor, and familiar with the rules and practice of the courts. He nowhere asserts that he was ignorant and uninformed of the return-day stated in the original subpœna, which was shown to him. He does not even claim that he would have appeared in the cause had the service been entirely regular. He does not claim to have any defense to the action upon the merits. He presents no answer which he proposes to file.[1] He asks no leave to enter an appearance, or to answer, and asserts no intention of either appearing or answering in the cause.

His only grievance is that the complainants did not take an account of, and apply the rents and profits upon, the amount due upon the notes. He knew the case was proceeding in the court, and that the report of the commissioner was filed. He waited nearly a year after that, permitting complainants to incur expenses in advertising the land for sale, and then applied to have all proceedings set aside. All these facts give color to the appearance that it is in this way he is carrying out his threat made nearly a year before, when apprised that the commissioner had made his report, that he would " show them a trick some day."

No cause whatever was shown for setting aside the service of the subpœna. Neither was there for setting aside the order *pro confesso*. If the defendant appears in a cause pending in chancery, he must enter his appearance with the

---

[1] A petition to open a decree should be accompanied by proposed answer: *Long v. Long*, 59 Mich. 299.

register in the Book of Common Orders. It is different from
an appearance at law, where service of notice of retainer is
an appearance which makes it necessary to show by affidavit
that no appearance has been had, since the records and files
might not disclose the fact. But in chancery the records
will always disclose the fact of appearance. As a matter of
good practice, it may be better to file an affidavit of non-
appearance before proceeding to enter defendant's non-
appearance and taking the bill as confessed, but it is not essen-
tial, and its omission is not error.

It is well settled that opening a decree, and permitting a
defendant to come in and defend, is a matter within the sound
discretion of the court, when applied for within a reasonable
time. Whether it should be done by bill of review or peti-
tion depends upon the situation and circumstances of the
case: *Brewer v. Dodge*, 28 Mich. 359; *Dunn v. Keegin*, 3
Scam. 297; *Gwin v. Harris*, 1 Smedes & M. Ch. 528; *Mills-
paugh v. McBride*, 7 Paige, 512; *Wooster v. Woodhull*, 1
Johns. Ch. 539.

This being so, the remedy by *mandamus* cannot obtain
where the case shows that there were any facts upon which
the relief is asked to support the conclusion reached by the
court, or where, perhaps, there has been a wanton or gross
abuse of discretion tending to the manifest injury of the
complaining party. In this case, under the circumstances
presented in this record, no facts exist which authorize the
exercise of judical discretion in setting aside the service of
the subpœna or the order *pro confesso*. It was the duty of
the complainants to have rendered an account of the rents
and profits, if any there were (and if not, to have proven
that fact), and to have applied such rents and profits upon
the amount secured by the mortgage. It appears, by com-
plainant's own showing, that there were such rents and pro-
fits in excess of the necessary expenses of carrying on the
farm.

The circuit court, in the exercise of its discretion, has
vacated the decree and the report of the commissioner. There
was evidence to warrant this action, although it might have

been justly refused on account of defendant's laches, which was not at all excused by defendant. We find nothing in the case to warrant the order made directing the defendant to enter his appearance within 30 days. This suit is brought by administrators of an estate to foreclose a mortgage against which no invalidity is suggested. The defendant has permitted the case to proceed without objection until a year has elapsed since the proceedings were commenced. If he should be successful in now setting aside the service of the subpœna, another year must elapse before a sale can be had. This cannot be permitted on technical grounds, and without any showing of merits.

A: *mandamus* must be issued directing the court to vacate those portions of the order made by him above quoted which grant the prayer of the petition in this: in setting aside the return of the subpœna, the order taking the bill as confessed, and the order requiring the defendant to enter his appearance in said cause.

There must be a new order of reference to a circuit court commissioner to ascertain and compute the amount due and unpaid, and the complainants must render before such commissioner, on oath, an account of the rents and profits, and of the necessary outlays and expenses, and the net rents and profits must be applied on the indebtedness secured by the notes and mortgage. No costs are allowed.

CAMPBELL, C. J., and MORSE, J., concurred.

SHERWOOD, J. I think the writ in this case should be granted.

The order asked to be vacated was based mainly upon an irregularity which was well known at the time it occurred to the defendant, and to no one else. It did not deprive the court of jurisdiction. The defendant was an attorney at law, and both equity and good practice required him, if he was injured thereby, or desired to take advantage of the irregularity, to do so at the first opportunity, in the court below. This he did not do, but, as appears, purposely delayed his

action until after the decree was made, and the property was being advertised for sale.   His motion comes too late.

The rents and profits of the lands, after deducting taxes, interest, and expenses, were necessarily very inconsiderable, and could as well be applied to the other indebtedness of defendant to the estate ; and, whatever they were, they could only be considered in the nature of an equitable set-off, when the amount was ascertained, against the amount found due upon the mortgage, and which might be applied to the extinguishment of the same to the extent received by complainants, if requested by the defendant at the proper time.  Such request was not made, but carefully avoided by the defendant, and with a full knowledge of all the facts.   The complainants were not required, under the statute, to make such application before decree, where personal service of the subpœna had been made, without appearance and request by the defendant, and, under the circumstances appearing in this case, such equitable set-off must be, I think, regarded as waived by him.

I am unable to discover any equitable ground upon which the order made by the learned circuit judge can be sustained ; or upon which he could exercise any equitable discretion.  A denial of the order asked for by relators would be allowing the defendant to take advantage of his own wrong to the prejudice of the complainants.  This is not permissible, either at law or in equity, and cannot receive my assent.   I think justice requires that the writ should be granted, and that complainants should recover their costs against the defendant.