POTTER *v.* MARTIN.

1. BANKRUPTCY—PETITION—AMENDMENT—OPERATION OF ASSIGN-
MENT.

Where a petition in bankruptcy was held insufficient, but,
on amendment, was made the foundation of the proceedings,
the assignment related back to the date of the filing of the
original petition, and vested the assignee with the title to
property then held by the bankrupt, as against a transferee
from the bankrupt prior to the filing of the amended petition.

2. SAME—SALE BY ASSIGNEE—TIME.

A sale of property by an assignee in bankruptcy is not in-
valid because not made until six years after the order of sale.

3. SAME—CONFIRMATION—NECESSITY FOR.

Whether confirmation of a sale by an assignee in bankruptcy
is essential to its validity,—*quære;* the court inclining to the
view that it is not.

4. SAME — PENDENCY OF PROCEEDINGS — JURISDICTION OF PROP-
ERTY.

Where the record in bankruptcy proceedings in a federal
court showed that they were still pending on an application
for the confirmation of the sale of the assigned property, a
grantee of the property from the bankrupt could not assert
title against the assignee's grantee in a suit to quiet title in a
state court, since, even if the latter acquired no title, the
property was in the control of the federal court.

5. SAME—MINISTERIAL OFFICER—DEEDS—LIMITATIONS.

An assignee in bankruptcy, appointed by a United States dis-
trict court for Michigan, is a "ministerial officer of a court
of competent jurisdiction within this State," within 3 How.
Stat. § 8698, subd. 1, barring a right of entry, after the lapse
of five years, against one occupying land under a deed from
such an officer.

6. SAME—QUIETING TITLE—PLEADING.

Where, on a bill to quiet title against a grantee from an
assignee in bankruptcy, the answer alleged facts showing
that defendant had been in possession for five years, it was
sufficient to raise the question of such limitation, though it
did not in terms plead 3 How. Stat. § 8698, subd. 1, by which
such limitation is imposed.

Appeal from Berrien; Coolidge, J.   Submitted November 15, 1899.   Decided December 30, 1899.

Bill by Sophronia Potter against John F. Martin and others to quiet title.   From a decree for defendants upon their cross-bill, complainant appeals.   Affirmed.

*M. L. Howell* and *Edward Bacon*, for complainant.

*N. A. Hamilton*, for defendants.

HOOKER, J.   This is a bill to quiet title to land.   The parties complainant and defendant derive title to the *locus in quo* from a common source, viz., Benjamin C. Hoyt, complainant's father.   The defendants' title is prior in point of time, being derived through an assignee in bankruptcy, under federal law, by deed dated January 10, 1881.   The complainant's title consists of a quitclaim deed from her father, dated April 16, 1891; and this deed undoubtedly conveyed to her whatever interest he had at that time, and no more.   Her right to relief must therefore depend on—*First*, proof of her possession when the bill was filed; *second*, the invalidity of the defendants' alleged title.   The learned circuit judge who heard the case decided against her upon both points.   In the matter of possession, we think that she has failed to show the requisite occupancy.   The defendants fenced the lot, and used it for such purposes as vacant lots are used for several years. She sought to show an interruption of this, and that she took and retained possession for a time before filing her bill. We are of the opinion that her acts amounted to no more than a trespass, and that she cannot be said to have been in possession.

Benjamin C. Hoyt and his son were made defendants in bankruptcy proceedings upon the application of one Whittlesey, a creditor, filed October 10, 1873.   Benjamin C. Hoyt, the survivor, was duly adjudicated bankrupt on June 1, 1874, and this was recognized by the Supreme Court of the United States in *Chapman* v. *Brewer*, 114

U. S. 158. The land in controversy was deeded to the defendants' grantor by the assignee under an order of the court. Three points are made against the validity of this deed:

1. That the assignee did not acquire title, for the reason that, before the court acquired jurisdiction of the lands, Hoyt deeded them to one Collins.

2. That the sale and deed were made by the assignee some six years after the order of sale.

3. That the sale was never confirmed.

We will examine these claims in their order.

Hoyt and his son were in partnership, and, finding themselves in failing circumstances, had negotiations with some of their creditors, with a view to avoiding proceedings in a court of bankruptcy. Whittlesey, one of their creditors, appears to have preferred judicial proceedings; for on October 10, 1873, he filed his petition in bankruptcy in the district court at Grand Rapids. Subsequently, and on January 20, 1874, Hoyt deeded the land to Collins in trust, to be applied to the payment of debts in conformity to the mode pointed out by the federal bankruptcy law. Soon after, and on January 29, 1874, another creditor, Moynahan, filed another petition in bankruptcy. Exceptions were filed on behalf of Hoyt & Son to the Whittlesey petition. The date that these were filed does not appear, but it does appear that on February 24, 1874, it was adjudicated that the exceptions were well taken, and 15 days were given to the petitioner within which to amend the petition; and it was further ordered that whereas Hannah Moynahan had filed a further petition of like character, to which the respondents had appeared and filed denial, and demanded trial by jury, the case should be adjourned into term for hearing. March 5, 1874, Whittlesey filed an amended petition. June 1, 1874, Enoch C. Hoyt, the son and partner, having died, and his death having been suggested upon the record, Benjamin C. Hoyt withdrew his denial, and there was an adjudication in bankruptcy against him, and a reference to the register in bankruptcy.

October 1, 1874, the register made the ordinary general
assignment to Brewer, the assignee.    November 4, 1874,
the court made an order of sale.    December 5, 1874,
Brewer filed an inventory; and on December 10, 1878,
a *nunc pro tunc* order was made, by consent, that the
record, which showed that the adjudication was upon the
petition of Moynahan, should be changed and made to
appear, as was the fact, that it was upon the petition of
Whittlesey.    December 31, 1880, Collins made an ordinary
quitclaim deed to Brewer, as assignee in bankruptcy, of the
property which had been deeded to him in trust.    January
5, 1881, Brewer, claiming to act under the order of sale,
sold at public sale, and on January 10th deeded to John
Martin, the land in controversy in this suit, and the deed
was recorded on January 18, 1881.    Brewer died in March,
1889.

April 16, 1891, the quitclaim deed was made to com-
plainant.    December 18, 1891, Benjamin C. Hoyt filed a
petition alleging the previous existence of the partnership;
its embarrassment; a meeting of creditors, at which nearly
all signed releases, agreeing to make their claims under
the deed to Collins, to avoid the loss by bankruptcy pro-
ceedings; the giving of such deed; Whittlesey's petition,
erroneously alleged to have been filed after the Collins
deed was made, and the allegation that said petition was
void on its face; the removal of Benjamin C. Hoyt to
Mississippi in the belief that Collins would be faithful to
his trust; that in June, 1889, petitioner returned to Michi-
gan, and had investigated the manner, extent, and result
of the disposal of his estate, and that it appeared to have
been sold by Brewer as assignee, and that he executed
and delivered deeds that purport to convey only such title
as petitioner had at the time of the assignment in bank-
ruptcy, and that Collins still held title until after said sales
and deeds were made, when he conveyed by quitclaim to
the assignee; that the Collins deed was considered an out-
standing title by the purchasers, who were some of peti-
tioner's creditors.    It prayed a review of the proceedings,

122 MICH.—35.

and, in short, such relief as the inquiry might show peti-
tioner entitled to, if it should appear that the petitioner's
estate was under the jurisdiction and control of the court.

On December 15, 1893, John F. Gard was appointed
assignee in place of Brewer, deceased. March 12, 1895,
an order was filed reciting a petition filed by Gard,
assignee in bankruptcy, praying a confirmation of the
sales by Brewer, an answer filed by Hoyt, and a replica-
tion, and directing proofs to be taken. On March 29,
1898, the clerk of said court, by a certificate, showed that
the proceedings were still pending, and said order to take
proofs was the last proceeding therein

The first question seems to be answered by the decision
of the Supreme Court of the United States in the case
cited, which held that "the assignment, when made, re-
lated back to October 10, 1873, and vested title in the
assignee as of that date," and "that the adjudication was
regular and valid, and refers to and was made on the first
petition as amended by the second, and on a proceeding
commenced when the first petition was filed." This de-
cision was upon a bill filed by the assignee against execu-
tion creditors, who attached the property before anything
was done upon the first Whittlesey petition. The pro-
ceedings show that the Whittlesey petition first filed was
not treated as void; being amended by leave of court,
and made the foundation of the proceedings. Hoyt with-
drew his denial, and Collins deeded to the assignee,— an
unnecessary act, as the deed to him could not stand
against the assignee.

We see no reason for saying that the sale by the
assignee was invalid because not made at once after the
order was made. As late as 1885 the proceedings were
treated as valid by the appellate court, and in 1895 an ap-
plication to confirm was filed, and order of hearing made.
No authorities are cited in support of the proposition that
mere inaction ousts such a court of its jurisdiction.

The learned circuit judge who heard this cause was
of the opinion that no order of confirmation was essential.
The case of *In re O'Fallon*, 2 Dill. 548, is cited as indica-

tive of the existence of the practice of confirming such sales, but it is not clear that the case goes further than to vindicate the power of the court to order a resale for inadequacy of price.  Section 4 of the bankruptcy act (18 U. S. Stat. at Large, chap. 390) provides that the court, *on application of any party in interest,* shall have complete supervisory power over such sales, including *the power to set aside the same and to order a resale,* etc. This would seem to imply that the sale should stand unless *some interested party should move to vacate it.* This may have been the practice followed in the *O'Fallon Case,* as it certainly was in the case of *In re Troy Woolen Co.,* 8 Blatchf. 465.  In *Re Alden,* 16 N. B. R. 39, the question was raised, and the court held that confirmation would not be made, but the purchaser would be left to establish his title when occasion should arise; citing *Donnel's Case,* Fed. Cas. No. 3986*a.*  We incline to the view taken by the circuit judge.  But, as the record shows that the proceedings are yet pending upon a petition for confirmation, the complainant has no right to assert her title against that of the assignee or his grantee.  If the deed did not vest the purchaser with title, the property is still in the control of the federal court.  *Oliver* v. *Sanborn,* 60 Mich. 356.

If it could be held that the federal court has no longer jurisdiction, another answer to the complainant would be found in defendants' possession, which, under subdivision 1, § 8698, 3 How. Stat., bars a right of entry, after the lapse of five years, against one occupying under a deed from a ministerial officer of a court of competent jurisdiction within this State.  The district court of the United States for the Western district of Michigan is such a court, and an assignee in bankruptcy is such an officer.  It is said that the answer does not raise this question.  It is true that it does not in terms plead the particular statute, but that is unnecessary.  The answer alleges facts which sustain its claim of possession.

The decree is affirmed, with costs.

The other Justices concurred.