HENNES *v.* CHARLES HEBARD & SONS.

1. Value—Opinion Evidence—Market Price.
   As an element of damages for marketable timber, the value to the owner of a mill at a given market was improperly included in one of plaintiff's interrogations, but in the view of all the testimony prejudicial error was not made out.

2. Same—Damages—Logs and Logging.
   Evidence in support of plaintiff's theory that he was entitled to recover the market value of converted logs at the nearest market, deducting cost of transportation, was correctly received to show the average cost of hauling and loading, the cost having been shown to vary at different seasons of the year.

3. Evidence—Expert Testimony—Timber Estimates.
   The estimate of one witness based on stump and top measurement of timber might properly be supported by testimony of another experienced estimator that such method was an accurate one.

4. Process—Service—Proof—Return—Sheriff.
   There was a substantial compliance with the court rule by the return of a sheriff, that he "served the within subpœna by copy on Ethan Critchfield and Mrs. Elizabeth Critchfield, personally on Elizabeth Critchfield by delivering to each of

said defendants a true copy of the within subpœna inscribed 'copy' and subscribed 'T. M. Brady, complainant's solicitor,' and, at the same time I showed them, said defendants, the original subpœna," etc. The words "on Mrs. Elizabeth Critchfield" should be rejected as surplusage. Chancery Rule 4, subd. 6.

5. TROVER AND CONVERSION—COTENANCY—JOINT TENANTS.
Trover was the proper form of action for timber cut from land owned principally by plaintiff alone, though as to one description he was a cotenant with defendant; under the exception to the general rule that a cotenant may bring trover for joint property where the cotenant has lost or destroyed or so converted it to his own use as to render impossible any further enjoyment by the other.

6. SAME.
The cotenant was not entitled to cut timber from the common estate and take it to mill, mixing the property with other timber of his own.

7. SAME—WASTE.
Such action constituted waste.

8. SAME—DEMAND.
A demand was unnecessary, as a basis for trover, where the evidence showed a removal of the timber and an actual conversion by defendant.

Error to Houghton; Streeter, J. Submitted January 6, 1911. (Docket No. 50.) Decided May 3, 1912.

Trover by Leo Hennes and others against Charles Hebard & Sons, a corporation, for the conversion of certain timber. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Mason & O'Connor (Allen F. Rees, of counsel),* for appellant.

*Ball & Stone,* for appellees.

BIRD, J. Judgment in trover passed against the defendants in the trial court for the value of certain sawlogs and poles cut from lots 3 and 4 on section 26, Township 52 North, of Range 32 West, in Baraga county. Both parties claimed title to the lots. The plaintiffs claim title to all

of lot 3 and an undivided half of lot 4 through a mortgage foreclosure and commissioner's deed, which was made in 1878.    The defendant claims title to both lots through a conveyance from one Critchfield in 1893, who was also the mortgagor in the foreclosure proceedings.    The questions raised by defendant are:

*First,* that evidence on the question of values was improperly admitted; *second,* that the commissioner's deed, under which the plaintiffs claim title, is void; *third,* that plaintiffs failed to show any conversion of the logs and poles taken from lot 4; *fourth,* that no demand was made by plaintiffs prior to commencement of suit; *fifth,* that the trial court did not give the correct rule of damages with reference to the logs and poles cut from lot 4.

It was stipulated that the defendant removed the timber in good faith, believing that it was the sole owner of it.

*First.* Complaint is made because the witness Green was permitted to answer the following question:

"Do you know what the value of hemlock sawlogs would be on the beach 4 or 4½ miles from the Hebard mill to one operating that mill?"

It is said that this question was incompetent and immaterial; that the value "to one operating that mill" was not a proper criterion of plaintiffs' damages, but, instead, the market value was the proper one.    It appeared from the testimony of the witness that he had been engaged in lumbering for 10 years cutting mixed timber, and that his mill was located at Ontonagon, not far from the Hebard mill, to which the product had been taken, and that both mills were tributary to Lake Superior.    He testified in detail as to the value of the several classes of timber, what it was worth at the Hebard mill, and what it would cost to cut and transport it to that mill.    While the particular question asked was objectionable in that form, we are inclined to the view, from all of his testimony, that neither the witness nor the jury understood that any value other than the market value was being considered.

. The witness was further permitted to testify, over defendant's objection, what the average cost of logging such premises would be. It was plaintiffs' theory of damages that they were entitled to the market value of the logs and poles at the nearest market, less what it would cost to lumber and transport them to the Hebard mill. We can see no impropriety in allowing the average cost of logging to be shown to the jury, inasmuch as it appeared that the cost varied at different seasons of the year, and that it was uncertain as to just when all of the logging was done. The defendant insists that the market value at the time and place of conversion was the only proper method. We think the plaintiffs' theory of damages was a proper one and one that has been sanctioned by this court in the very similar case of *Winchester* v. *Craig*, 33 Mich. 205, and quite recently approved and followed in *Anderson* v. *Besser*, 131 Mich. 481 (91 N. W. 737).

Peter Larson was permitted to answer the following question:

"What have you to say as to the accuracy of a stump and top measurement, as based upon your experience?"

Darwin Forbes had preceded Larson as a witness, and testified as to the amount of timber taken from the premises, estimating it by what is known among lumbermen as the "stump and top measurement." Counsel say that this testimony—

"Was incompetent as tending to bolster up the testimony of Forbes, and as an attempt to ask the witness what weight should be given to the testimony of another witness."

We think there is no merit in this objection. A certain method of estimating had been followed, and the question sought to develop whether that method made for accuracy in estimating as much as other methods which were sometimes employed. Larson had had 20 years' ex-

perience as a timber cruiser and estimator and was amply qualified to speak of the accuracy of the several methods usually employed in estimating the quantity of timber after it has been removed.

*Second.* It is contended that the commissioner's deed, through which plaintiffs claim title, is void because the court which made the decree of sale never obtained jurisdiction over the defendant. To show the lack of jurisdiction, the defendant relies upon the return of the officer. The return reads as follows:

" I hereby certify and return that on the 16th day of August, 1876, I served the within subpœna, by copy, on Ethan A. Critchfield and Elizabeth Critchfield, personally on Mrs. Elizabeth Critchfield, by delivering to each of said defendants a true copy of the within subpœna, inscribed ' copy ' and subscribed ' T. M. Brady, Complainant's Solicitor,' and at the same time I showed them, said defendants, the original subpœna with the seal of the court impressed thereon."

It is insisted—

" That this return fails to show a personal service at least upon defendant Ethan A. Critchfield, who was the owner of the land, but as worded it shows clearly that there was no personal service at all."

The rule regulating the service of chancery subpœnas provides that:

" It may be served by delivering a copy of the writ, subscribed by the complainant, his solicitor, or the officer or person serving the same, and inscribed ' copy,' and showing the original, under the seal of the court, at the time of such delivery, to the defendant." Chancery Rule 4, subd. 6.

In making service of a subpœna, two things are essential: A copy of the subpœna must be delivered to the party to be served, and the officer or person making the service must at the same time show him the original subpœna with the seal of the court impressed thereon. The return shows that both of these essentials were substantially complied with. The words "on Mrs. Elizabeth Critch-

field " should be treated as surplusage and rejected as such. When this is done, the misleading feature of the return disappears.

*Third.* The point is made that, assuming plaintiffs' title is good, they are then the owners of lot 3 and owners of an undivided half of lot 4, thereby making them cotenants with defendant as to lot 4. That being true, defendant argues that plaintiffs could not maintain trover against their cotenant for taking into its possession the timber, as the proofs do not show a conversion of it. The general rule is that one cotenant cannot maintain trover against his cotenant for the common property. There is an exception to the rule which provides that he may maintain such action if his cotenant has lost or destroyed the property or so converted or appropriated it to his own use as to render any further enjoyment by his cotenant impossible. 17 Am. & Eng. Enc. Law (2d Ed.), p. 700, and cases cited. The defendant recognizes the exception, but claims that the proofs went only to the point of showing that the timber was cut and taken to the mill, and that this action upon the part of defendant was not inconsistent with its right as cotenant and does not amount to a conversion. We cannot agree with counsel in this conclusion. It appears from the testimony that the defendant not only cut and hauled to the shore of the lake the timber on these lots, but that in so doing some of them became mixed with logs cut by defendant from the adjoining premises, and the same were afterwards towed four miles away to the Hebard mill. This treatment of the common property so far put it beyond the use and enjoyment of plaintiffs as to amount to a conversion of it by defendant. *Clow* v. *Plummer*, 85 Mich. 550 (48 N. W. 795).

If any further proof of conversion were needed, it might be found in the fact that the defendant was guilty of waste in removing the timber from these lands (*Benedict* v. *Torrent*, 83 Mich. 181 [47 N. W. 129, 11 L. R. A. 278, 21 Am. St. Rep. 589]), for which the statute gives the

plaintiffs an action on the case against the defendant. 3 Comp. Laws, § 11118.

*Fourth.* It is said no demand was made upon defendant before suit was commenced. If there were a conversion by defendant, no demand was necessary. *Williams* v. *Rogers*, 110 Mich. 418 (68 N. W. 240).

*Fifth.* The argument of counsel that the trial court did not give the correct rule of damages as to that part of the timber taken from lot 4 finds no basis in the record. Counsel evidently had some stipulation with reference to the damages; but, as it does not appear in the record, this assignment will not be considered.

The judgment of the trial court is affirmed.

MOORE, C. J., and BROOKE, BLAIR, and OSTRANDER, JJ., concurred.