KERR *v.* WEEKS.

1. MORTGAGES—FORECLOSURE—PARTIES—SUBPŒNA.

In ejectment for lands claimed by defendants through a foreclosure in chancery, the objection raised to the jurisdiction of the court that entered the decree that on one of the parties defendant a subpœna had been served which named only one of two defendants (having the usual underwriting), was not fatal to the validity of the decree after fifteen years, during which defendants had enjoyed possession without interruption. Cf. former Chancery Rule 4.

2. SAME—IRREGULARITIES—DELAY OR LACHES.

The omission to comply with the rule requiring the names of all parties defendant to be inserted in the subpœna amounted to no more than an irregularity subject to amendment by the court, and application to take advantage of such technical defect should be made with expedition or at the first opportunity.

3. SAME—STATUTES.

The rule has no greater force than a statute, and the power of the court to remedy or correct failure to comply with statute provisions is undoubted.

Error to Gratiot; Dodds, J., presiding. Submitted April 11, 1916. (Docket No. 85.) Decided June 1, 1916.

Ejectment by William Kerr against William F. Weeks and another. Judgment for defendants. Plaintiff brings error. Affirmed.

*Lyon & Moinet,* for appellant.

*O. G. Tuttle,* for appellees.

STONE, C. J. This is an action of ejectment to recover possession of the south fractional half of the southwest fractional quarter of section 30 in township 10 north, range 1 west, being in Gratiot county. To a declaration in the usual form the defendants pleaded the general issue. The case was heard before the court without a jury. From the amended findings of fact filed by the trial judge we compile the following facts:

The lands were duly pre-empted by the plaintiff on March 6, 1884. Final certificate issued to him February 21, 1885, and a patent was duly issued to him by the United States on December 11, 1891. On July 27, 1886, plaintiff mortgaged said lands to one Ambler for $200, and on May 13, 1887, he gave another mortgage thereon to one Wannacot for $100. By assignments which were duly recorded these two mortgages became the property of one Caroline E. Squires, who on July 6, 1891 (both mortgages being due and unpaid), filed her bill of complaint to foreclose the same, naming as defendants the said plaintiff, who gave the mortgages, and one William Norris, who was made a defendant under the clause in said bill which charged that he "has or claims to have rights and interests in the premises described in said indentures of mortgage, or in some parts thereof, as subsequent purchaser or incumbrancer, or otherwise."

On July 6, 1891, a subpœna in the usual form was issued, "To Wm. Kerr—Greeting," which was made returnable August 4, 1891, and was returned August 13, 1891, by the sheriff that he was unable to find the defendant. On that day an alias subpœna in the usual form was issued to said defendant Kerr, and there was a like return made on December 23, 1891, and again on said last-named day a *pluries* subpœna was issued in due form to said defendant Kerr returnable April 26, 1892, and a like return was made thereto. On April 22, 1892, another subpœna was issued in the same form, to defendant Kerr alone, and returnable May 24, 1892, and the same was served on said Kerr April 25, 1892, in the county of Emmet, Mich., by the sheriff of said last-named county, and due return was made thereof, and the same was filed in the office of the register in chancery on May 3, 1892. In all of said four subpœnas Caroline E. Squires was named as complainant and William Kerr was named as defendant, and no service of any other subpœna issued in said cause was made on said defendant William Kerr, and he did not appear in said cause. The underwriting attached to this last subpœna, which was in the usual form, was signed by solicitors for the complainant, and read as follows:

"A personal decree is sought against the defendant William Kerr, and the bill is filed to reach interests in property, and not to obtain any further relief against the remainder of the defendants."

On the 1st day of June, 1892, a subpœna was issued returnable June 13, 1892, directed as follows:

"To William Kerr (who has been served by the sheriff of Emmet county) and William Norris—Greeting."

And the same was served upon said defendant William Norris by the sheriff of Gratiot county. (The

record gives the date of service as June 31, 1892, an impossible date.) On July 1, 1892, an affidavit of non-appearance of defendant Kerr was filed, and on the same day an order *pro confesso* as to him was duly entered. On July 13, 1892, the defendant Norris appeared and filed a lengthy answer. On July 20, 1892, suggestion of the death of said complainant was made upon the record, and proceedings were had which resulted in Lorenzo Squires being appointed administrator of the estate of said complainant by the probate court of Gratiot county, and afterwards, and on December 27, 1892, by an order of the court, the said foreclosure suit was revived, and continued in the name of Lorenzo Squires, administrator. None of these proceedings to revive the foreclosure suit was served upon the defendant William Kerr, nor does it appear that he had knowledge of such proceedings.

After the said foreclosure suit was revived and continued in the name of the administrator a replication was duly made and filed on February 6, 1893, to the answer of said defendant Norris, and on February 13th notice was duly given by the solicitors for the complainant to the solicitors for the defendant Norris that complainant claimed the right, under the statute, to the examination of witnesses in open court, and notice of hearing was given to solicitors for defendant Norris, that the cause would be brought on for hearing on March 13, 1893, at the March term of said court, and that the same would be heard on pleadings and proofs taken in open court. On April 20, 1893, the said defendant William Norris by his solicitors filed a withdrawal of his answer, and waived notice of any further steps to be taken by complainant in the case. On May 15, 1893, an affidavit of regularity was filed by complainant, in which it was stated:

"That the said bill has been taken as confessed by the said defendant William Kerr, and the said William

Norris, after appearing and answering, * * * withdrew his said answer before the hearing of said cause and after due notice thereof, and made no defense to said cause and the bill of complaint made and filed as aforesaid, and also by his withdrawal waived all right to any notice of any further proceedings in said cause, * * * and that all the proceedings to take said bill as confessed have been regular and according to the rules and practice of this court."

On May 15, 1893, a decree of foreclosure was made in the usual form, allowing sale of said premises at any time after June 20, 1893, and thereafter, on June 22d, a notice of sale was given for the 14th day of August, 1893. On July 31, 1893, proof of posting notices of sale was made in the usual form, and on August 14, 1893, proof of the publication in the usual form of notice in the Gratiot Journal was filed.

On the said 14th day of August the sale was made to Aaron L. Squires and Julia E. Squires for the whole amount due upon said mortgages, with interest thereon, and costs and charges amounting to $592.78, and a commissioner's deed was made and delivered to them, and the same was on the same day duly recorded in the office of the register of deeds of said Gratiot county. By *mesne* conveyances the defendants in the instant case became the purchasers of the premises in question. It was conceded at the trial that the plaintiff herein was in possession of the said premises until after August 1, 1893, and that the purchasers at said foreclosure sale went into possession in the fall of 1893, and that they and all those who purchased under them, including the defendants herein, had continued in possession, to the time of the trial.

The conclusions of law as found by the trial court were as follows:

(1) "Plaintiff raises but one question as to the legality of the foreclosure proceedings, and that is that the chancery court did not obtain jurisdiction in the

foreclosure cause so as to cut off his title to the property in question, for the reason that there were two defendants in that chancery cause, and the subpœna which was served on him named him alone as defendant."

(2) "The only question in the case is whether the mortgagor can, nearly 15 years after the sale and deed by the commissioner under the decree of foreclosure in chancery, and where the purchasers at the sale have been in possession of the premises since shortly after the sale was made, recover in ejectment because the subpœna in chancery served upon said mortgagor in the foreclosure proceeding did not contain the name of another defendant who was made so under the subsequent incumbrancers, etc., clause, and when the underwriting states that a personal decree is sought against said mortgagor, and the bill is filed to reach interests in property, and not to obtain any further relief against the remainder of the defendants."

(3) "I do not think the omission was fatal to the jurisdiction, or that the foreclosure proceedings were invalidated by reason thereof. Other provisions of Chancery Rule 4 seemingly as important as the one requiring the names of all defendants to be inserted in the subpœna have been held merely irregularities that must be called to the attention of the court early. *Creveling* v. *Moore,* 39 Mich. 563."

(4) "And a defendant who is served with subpœna cannot ignore the same and after decree have the proceeding held for naught. *Gould* v. *Castel,* 47 Mich. 604 (11 N. W. 403); *Colton* v. *Rupert,* 60 Mich. 318 (27 N. W. 520)."

(5) "The invalidity of the argument that, if Norris' name had been inserted in the chancery subpœna which was served upon defendant Kerr, he could have known what suit was pending, and that the omission was misleading, is well shown here. Norris answered, and the answer shows that he was not in any way connected with either the plaintiff or defendant, or with either of the mortgages' in the chancery foreclosure case. He was a mere interloper, denying the rights of both parties, and, so far as it appears, had no connection with the plaintiff. If he had any rights, it

was not connected with the foreclosure case, and could not have been litigated therein.   Puterbaugh's Mich. Ch. (3d Ed.) pp. 344, 346."

(6) "I think defendant's counsel is also correct in his contention that the statute of limitations applies. 2 Comp. Laws, § 9714 (3 Comp. Laws 1915, § 12311); *Potter* v. *Martin,* 122 Mich. 542 (81 N. W. 424); *Semer* v. *Auditor General,* 133 Mich. 569, 576 (95 N. W. 732); *West Michigan Park Ass'n* v. *Railroad Co.,* 172 Mich. 179 (137 N. W. 799)."

(7) "The claim made by plaintiff's counsel when the evidence was being introduced that the proceedings to revive the foreclosure suit in the name of the administrator should have been served upon the defendant Kerr was abandoned at the argument."

(8) "Let judgment be rendered for the defendants, with costs."

Judgment having been entered for the defendants, the plaintiff brings error, and by appropriate exceptions and assignments of error raises the question of the validity of the foreclosure proceedings, asserting that the decree in the foreclosure case was void because the names of the defendants in that suit were not inserted in the subpoena served upon the defendant Kerr, the plaintiff here.

We are unable to agree with counsel for appellant in their contention that the circuit court in chancery in the foreclosure case did not obtain jurisdiction over the defendant Kerr, and that the decree was a nullity.   In addition to the cases cited by the learned circuit judge, we call attention to the following:   *Parks* v. *Goodwin,* 1 Doug. 56; *Johnson* v. *Johnson,* Walk Ch. 309; *Calender* v. *Olcott,* 1 Mich. 344; *Johnson* v. *Shepard,* 35 Mich. 115; *Gould* v. *Castle,* 47 Mich. 604 (11 N. W. 403); *Low* v. *Mills,* 61 Mich. 35 (27 N. W. 877); *Hennes* v. *Chas. Hebard & Sons,* 169 Mich. 670 (135 N. W. 1073).

We are of opinion that the defect was merely an irregularity which, under our broad statute of amend-

ments, the court could have readily amended. As was said in *Johnson* v. *Johnson, supra:*

"When any party wishes to set aside the proceedings of his adversary for a mere technical irregularity, he must make his application at the first opportunity; and a defendant who has not caused his appearance to be entered is entitled to no more indulgence than one who has appeared."

The chancery rule referred to does not provide that the process shall be void, or be quashed, or set aside, if the rule is not complied with. It cannot reasonably be said that this rule has any greater force than a statute. The power of the court to amend and correct such irregularities of noncompliance with statutory provisions is often exercised. *Van Slyke* v. *Rooks,* 181 Mich. 88 (147 N. W. 579); 3 Comp. Laws, §§ 10268, 10270 *et seq.* (3 Comp. Laws 1915, §§ 12478, 12480 *et seq.*).

We think that our own decisions dispose of the question, and that it is not necessary to cite cases from other jurisdictions. The entire argument of counsel for appellant is based upon the claim of want of jurisdiction in the court to enter the decree in the foreclosure case. We cannot agree with that claim.

We are of opinion that the trial court properly disposed of the case, and the judgment below is affirmed.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.