Shiras, District Judge.
Upon the filing of the opinion in this cause, counsel for appellees submitted a petition for rehearing, supported by briefs, in which it is strenuously contended that the court erred in holding that it was not open to the appellees to aver that William J. Wood was an alien, and therefore could not acquire any right or title in the mining claim located by him in conjunction with Fisk and Fitzpatrick.
It is urged that mining interests and rights form an exception to the general rule that the right to defeat a title to realty on the ground of alienage is reserved only to the sovereign, and reliance is placed upon a class of authorities of which O’Reilly v. Campbell, 116 U. S. 418, 6 Sup. Ct. Rep. 421, is a fair representative. In that case the defendants, claiming to be the owners of the Omaha lode, filed a survey and plat thereof in the proper land office, and applied for a patent thereto under section 2325 of the Revised Statutes. The plaintiffs, who were the owners of an adjacent mining property, known as the “Highland Boy Lode,” filed *251 an adverse claim for a patent to a portion of the land covered by the survey of defendants. The suit was to determine the right to this disputed portion, the judgment below being in favor of the plaintiffs. In the, supreme court a reversal was sought on the ground that the findings of fact did not show that the plaintiffs were citizens of the United States. Upon this point the supreme court ruled that—
“It is true that the mineral lands of the United States are open to exploration and purchase only by citizens of the United States, or by those who have-declared their intention to become such; and, had the objection been taken in the court below that such citizenship of the plaintiffs had not been shown, it might, if not obviated, have been fatal. There is, however, nothing in the record to show that it was raised below.”
There can be no question, under the provisions of section 2319 of the Revised Statutes, that, when application is made for the issuance of evidence of title to mining property, it is necessary to show that the applicant is a citizen of the United States, or has declared his intention to become such, before a conveyance of title can be properly issued; and therefore, as was held by the supreme court in the case just cited, if a party is seeking to procure the title to mining property from the United States, if taken at the proper time, the objection of alienage would prevent the acquirement of title, and such objection may be made by any one adversely interested. In such cases the sovereign is a party in fact to the proceeding, which is a direct one, for the procurement of title, and the objection of alienage, no matter by whom suggested, is based solely upon the right of the government to interpose the fact of alienage as a bar to procuring or holding an interest in realty. If, however, the grant of title, or the equivalent, is made to an alien, .it cannot be attacked by any third party. Thus in Governeur v. Robertson, 11 Wheat. 332, it is said:
“That an alien can take by deed, and can hold until office found, must now be regarded as a positive rule of law, so well established that the reason of the rule is little more than a subject for the antiquary. It no doubt owes its present authority, if not its origin, to a regard to the peace of society and a desire to protect the individual from arbitrary aggression.”
The fact that when a party is seeking to procure a title to mining property from the United States it is open to any third party who asserts an adverse claim thereto to suggest the objection of the alienage of the first claimant does not meet the question arising on the facts of the case at bar. In this case Wheeler and his grantees are claiming the benefit of the location made by Wood, Fisk, and Fitzpatrick, and are claiming the right to the mine, not through some adverse location, but through what was done by the original locators. Wheeler and his grantees are now claiming title to the mine through. deeds procured from the heirs of Wood, and it is certainly not open to them to rely upon the deeds as the means whereby they have procured the title to an undivided interest in the mine, and yet, when called to account for the wrongful procurement of the deeds, to deny the validity of the location made by Wood, on the ground of alienage. It was upon this view of the case *252 that we held that if Wood were living, and had brought suit against the present defendants for the protection of his rights, the latter could not rely upon the plea of alienage to defeat a recovery. If Wood were living, and should, by proceedings in the proper land office or in a court of competent jurisdiction, seek to procure the issuance of a patent as evidence 'of title, it would be open to any one claiming an adverse right to the property to show that Wood was an alien, and therefore not competent to take the title; but it would not be open to one whose title is derived from Wood to claim, on the one hand, the benefit of the conveyance from him, and, on the other, to assert its invalidity. If Wood, during his lifetime, had expended time, labor, and money in the working of the mine, resulting in the accumulation of a sum of money which should be placed in a bank or in the hands of his colocators, could it be possible that to an action for the recovery thereof a plea of alienage could be sucessfully interposed, on the ground that the money was the product of the mining right, and that as an alien Wood could not procure a title thereto?
As we viewed the case, it appeared that Wheeler and his grantees were claiming title under the location made by Wood and others, and therefore, in our judgment, the case was one wherein it must be assumed that the filing the location and the possession held thereunder must be deemed to have created an interest in the property in Wood and his colocators, and this interest, thus vested, could not be collaterally attacked by parties whose rights were dependent upon the validity of the location in question. If Wood had applied for the issuance of a patent or other evidence of title, it would have been the duty of the officers of the land department to have demanded evidence of his citizenship, or of his declaration to become such, and a failure to furnish the same might have been fatal to his claim; and, if there had been an adverse claimant to the property, holding under an interfering location, the latter could insist on the objection of alienage. Such objection, if sustained, however, would only defeat the claim of the alien. It would not in any sense sustain the title of the objector. Herein lies the inequity of the position assumed by. the appellees in this cause. They claim title under the location made by Wood and others, and as to them it must be held that in fact there was vested in Wood an interest in the mining property, defeasible by the United States, but not liable to be questioned collaterally in a proceeding of the nature of that now before the court.
If, however, we are in error in this view of the law, it does not follow that a rehearing should be granted, for the reason that it is the unanimous opinion of the court that the evidence in the case shows that in fact Wood, before locating the mine in question, had declared his intention to become a citizen of the United States. The evidence shows that when Wood left Canada, in 1870, he went to Kansas, and while there he entered certain of the public lands. There is put in evidence a copy of a declaration signed by James Wood, under date of June 27, 1870, and duly recorded in Allen county, Kan., and the *253 evidence satisfies us that the declarant, James "Wood, was the William James Wood who was one of the locators of the Emma mine in 1880. Having thus declared his intention to become a citizen of the United States, he was legally entitled to locate a mine upon the public lands, and his title thereto is not open to attack on the ground of alienage. Under the facts established by the evidence in the case, it therefore appears that William J. Wood, at the date of his death, was the legal owner of an undivided one-third interest in the Emma mine, and this interest passed to such persons as, under the laws of Colorado, were entitled to share in the distribution of his estate. These distributees were his widow and children, several of whom were then residents of the United States. We find nothing in the record that would justify the holding that Wood’s interest had become forfeited to his colocators, and therefore the title to the interest vested in Wood at the time of his death passed to his widow and children. It is not claimed that Matilda, William H., Thomas E., or Hiram A. Wood have conveyed or released their interests to any one, and there is no ground upon which Wheeler or his grantees can assert a right to the interests belonging to the parties just named. The interests of the widow, Mrs. Billings, James 0. and Charles E. Wood, are claimed by appellees by reason of the execution of the deeds executed by these parties under the circumstances detailed in the opinion originally filed, and which were held to be voidable for the reasons therein stated. We have reviewed the evidence in the light of the arguments contained in the briefs of counsel, submitted with the petition for rehearing, but we find no sufficient ground for doubting the correctness of the conclusion reached in the first instance. We cannot agree with counsel that the representations made to Mrs. Billings and her sons were purely the expression of opinions upon questions of law. They embraced also statements of fact, intermingled, it is true, with statements of law, but the ultimate effect of which was to misrepresent the facts material to be understood and considered by these parties in determining whether they would execute the releases sought from them. Upon the whole, we find no reason to believe that a rehearing would result in a different conclusion upon either the law or facts, and the petition for a rehearing is therefore denied.
In the brief submitted on behalf of counsel for appellants it is suggested that the order heretofore made requiring Richard J. Doyle to be made a party to this suit should be rescinded, mainly on the ground that making him a party may lead to disputes between the appellants and Doyle touching his rights. We remain of the opinion that Doyle should be made a party. It is due to the appellees that all parties who may be in position to assert rights to any portion of Wood’s share in this mining property should be made parties to this action, so that the one proceeding may adjudicate such rights, and the one accounting be all that is necessary. If,' as suggested, any question arises between Doyle and appellants, growing out of the deeds of trust executed by Mrs. Billings and her two sons to Doyle, the issues presented thereby need not interfere with the progress of the accounting in the main cause. The *254 ■trial court has full power to deal with the situation as it may arise, and to so conduct the further proceedings as to reach a final conclusion with the greatest speed and at the least cost.
We see no necessity for modifying the order already made in the case in any particular, and therefore the entry now made is simply that the petition for rehearing is denied.