## VANDERVELDEN v. CHICAGO & N. W. RY. CO.

(Circuit Court, N. D. Iowa, Cedar Rapids Division. April 9, 1894.)

1. RELEASE—BAR TO ACTION FOR PERSONAL INJURIES—FRAUD.

In an action at law to recover damages for personal injuries, a release intentionally executed by plaintiff for a money consideration, knowing the legal effect thereof, cannot be attacked, or its effect as a complete bar avoided, by showing that plaintiff was induced to sign it by the misrepresentations of defendant's surgeon, who attended him, as to the permanent character of his injuries. The action, however, may be suspended while plaintiff brings an independent suit in equity to rescind the release for fraud.

2. RESCISSION OF RELEASE—TENDER OF CONSIDERATION.

A suit to rescind a release of a claim for personal injuries cannot be maintained without tendering back the money paid as a consideration therefor, and keeping the tender good.

This was a motion on the part of defendant to exclude certain evidence in an action at law by A. N. Vandervelden against the Chicago & Northwestern Railway Company to recover damages for personal injuries received while in its service.

Struble & Stiger and C. A. Clark, for plaintiff.

J. C. Cook and Hubbard & Dawley, for defendant.

SHIRAS, District Judge. In order to properly state the exact question presented by this motion to strike out part of the testimony, and the view of the court thereon, it is necessary to understand the issues as made by the pleadings. On behalf of the plaintiff it is averred that on or about the 15th of January, 1891, he was in the employ of the defendant company as a brakeman on a freight train running upon part of the defendant's lines in the state of Iowa; that on that day, while engaged in the line of his duty at the station of Havelock, he was injured through the negligence of the engineer in charge of the train, and for the damages resulting from the injuries thus caused him by the negligence of the engineer he seeks to recover in this action. On part of the defendant, all charges of negligence are denied, and, in addition thereto, defendant pleads that the defendant company paid the surgeons who attended the plaintiff during his illness for their services, and that on or about March 6, 1891, the parties compromised and settled all further claims on part of plaintiff, the defendant paying, as consideration thereof, the sum of $300; and as evidence of such settlement, and of the payment of said sum, a release in writing was executed by plaintiff, and delivered to the defendant, reading as follows:

### "Read This Release."

"In consideration of the sum of three hundred dollars ($300) to me in hand paid by the Chicago & Northwestern Railway Company, the receipt whereof is hereby confessed, I hereby release and forever discharge said railway company from all claims and demands which I now have, or may have, against it by reason of injuries received by me on or about the 15th day of January, 1891, at Havelock, Iowa, caused by falling from or being thrown off one of said company's cars in a freight train on which I was acting as brakeman, thereby breaking my right leg and otherwise seriously injuring me; and in full for all

claims which I have or may have on account of said accident. Witness my hand and seal at Eagle Grove, Iowa, this sixth day of March, A. D. 1891.

"Nicholas Vandervelden. [L. S.]

"Geo. Kaiser, J. P., Eagle Grove, Iowa."

By way of reply the plaintiff admits the execution of the release, but avers that at the time he executed the same he was in feeble health as a consequence of his injuries, and that he was induced to make the settlement and sign the release through the solicitations of the surgeon of the defendant company who had charge of his case, and more particularly through the misrepresentations of the surgeon to the effect that in a reasonable time his leg would be all right, and that, if he did not settle, he would not be able to collect anything from the company, whereas in fact his injuries are serious and permanent, and his leg has never been restored to a proper condition, and is in fact useless to him.

After the introduction of testimony tending to show the happening of the accident and its result to plaintiff, it was proposed to offer testimony on behalf of plaintiff in regard to the settlement, and the inducements held out to secure the same, to which defendant's counsel objected, stating, however, that the court might hear the evidence, and that defendant would move to strike it out, thus presenting the objection more clearly. The plaintiff thereupon testified, in substance, that he executed the release through the persuasions of the surgeon in attendance upon him, and more particularly in reliance upon his assertion that in a short time his leg would be all right, and that he would be able to be up and about his business. Upon the close of this testimony the defendant moved to strike out the same upon two grounds: First, that the execution of the release is admitted, and neither in the pleading nor in the evidence is it claimed that the plaintiff was in any way misled as to the legal effect and purpose of the release, nor is it claimed that he did not intend to sign the release, or that he did not receive the $300; and, second, that the plaintiff had not paid back, or offered to repay, the $300 by him received under the settlement.

The point presented for decision by the first ground of objection is whether, in an action at law, a written release of the character of that introduced in evidence can be impeached for fraud not inhering in the execution thereof, but which only goes to the extent of the consideration. It is not claimed that the plaintiff did not intend to sign the instrument in question, or that he was misled as to its legal effect. The evidence offered shows that he, at the time he signed it, intended to fully release and discharge the company from all further liability to him by reason of the accident named in the release. The reply filed by plaintiff expressly admits the execution of the instrument. For the execution thereof he was paid the consideration therein named. Upon its delivery the instrument became legally binding. Can the plaintiff, in an action at law, escape the legal force of this release by showing that the injuries he received are more serious and permanent than he believed them to be when he settled therefor, even if such belief was created by misrepresentations made by the surgeon of the company who had the care of his

case? By sections 2112 and 2113 of the Code of Iowa, the use of private seals in written contracts, except in case of corporations, is abolished, and it is declared that all contracts in writing, signed by the party to be bound or his agent or attorney, shall import a consideration. Practically, the distinction existing at common law between instruments under seal and those not under seal is thus abrogated in Iowa. The execution of the release being admitted in the pleadings, no evidence is required on part of the defendant to sustain the defense based thereon. Being in writing, and its execution by the plaintiff being admitted, it imports a consideration, and therefore at law its validity is established. Can the plaintiff, in this law action, attack it on equitable grounds? The ground of attack is not strictly a failure of consideration, for the plaintiff admits that he has received the full consideration named in the instrument, and the full amount which was promised him as an inducement for enter- ing into the settlement and executing the release. The position of the plaintiff is that he was misled as to the future results of his in- juries. At the time he made the settlement, in March, 1891, he then knew that his leg was in such a condition that, unless it grew better, it would be of little use to him. The representations of which he complains were as to future results, and it seems to me that, if falsely or ignorantly made, they cannot be availed of in an action at law. The release is a validly executed instrument, and in an action at law must be given its full legal force and effect. Thus, in Hartshorn v. Day, 19 How. 211, 222, it is said:

"Evidence was given on the trial in the court below for the purpose of prov- ing that the agreement of the 5th of September was procured from Chaffie by the fraudulent representations of Judson, which was objected to, but ad- mitted. The general rule is that, in an action upon a sealed instrument in a court of law, failure of consideration, or fraud in the consideration, for the purpose of avoiding the obligation, is not admissible as between the parties and privies to the deed, and more especially where there has been a part ex- ecution of the contract. The difficulties are in adjusting the rights and equi- ties of the parties in a court of law; and hence, in the states where the two systems of jurisprudence prevail,—of equity and the common law,—a court of law refuses to open the question of fraud in the consideration, or in the trans- action out of which the consideration arises, in a suit upon the sealed instru- ment, but turns the party over to a court of equity, where the instrument can be set aside upon such terms as, under all the circumstances, may be equita- ble and just between the parties. A court of law can hold no middle course; the question is limited to the validity or invalidity of the deed. Fraud in the execution of the instrument has always been admitted in a court of law; as, where it has been misread, or some other fraud or imposition has been practiced upon the party in procuring his signature and seal. The fraud in this aspect goes to the question whether or not the instrument ever had any legal exist- ence. * * * It is said that fraud vitiates all contracts, and even records, which is doubtless true in a general sense. But it must be reached in some regular and authoritative mode; and this may depend upon the forum in which it is presented, and also upon the parties to the litigation."

The doctrine of this case was affirmed in the later case of George v. Tait, 102 U. S. 564–570, wherein it was said:

"Proof of fraudulent representations by Myers & Green, beyond the recitals in the bond, to induce its execution by the plaintiff in error, was properly rejected. It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as

misreading, the surreptitious substitution of one paper for another, or obtaining by some trick or device an instrument which the party did not intend to give. * * * The remedy is by a direct proceeding to avoid the instrument."

There are doubtless cases to be found wherein the distinction pointed out by the supreme court has not been observed or has not been followed, and especially may this be true in states wherein legal and equitable rights are administered by one court and in one proceeding. This court, however, is bound by the ruling of the supreme court upon the question; and I can see no escape from the conclusion that, as the evidence introduced does not tend to show fraud in the execution of the instrument, but only fraud in the representations used to induce plaintiff to agree to a settlement of his claims, it cannot be availed of, in an action at law, as a defense to the plea of settlement evidenced by the written release. It is not denied, but, on the contrary, is admitted, by the plaintiff in his pleadings and testimony, that in fact he did enter into a treaty with the defendant company touching the settlement of his claim against the company; that terms of settlement were in fact reached; that the defendant performed the terms on its part by the payment of the sum agreed upon; that he (the plaintiff) received the sum agreed to be paid, thereby completing the settlement, and, as evidence thereof, that he (the plaintiff) signed and delivered the written release in question, knowing the character of the instrument he signed, and intending, when he signed and delivered it, that it should have the effect and purpose the law imputes to it. At the time of the execution and delivery of the instrument, a court of law could not pronounce it void. At that time, in a court of law, it was either void or valid. If valid then at law, it is valid now. The real position of the plaintiff is that although in fact he intended to make a full settlement with defendant, and although terms of settlement were reached which were then satisfactory to him, and although the terms of settlement were fully performed by the company and accepted by him, and although he executed the written release, knowing its contents and legal effect, and intending, at the time of its delivery, that it should bar him of all further claims against the company, nevertheless, since that time he has discovered that he was induced to make the settlement by false representations in regard to the nature and permanent character of the injuries inflicted upon him, and that these representations were of such a character, and made under such circumstances, as entitle him to repudiate the settlement, and to relieve himself from the legal bar created by the instrument by him executed.

Whether the equities are such as to justify the setting aside the release and the settlement upon which it is based, it is not for the plaintiff to determine. The other party has rights and equities that must be considered. It is therefore necessary, where the party desires to escape the legal bar created by a written instrument by him duly executed, knowing, at the time of execution, its legal effect, and especially where the other party has performed the contract on his part, that the remedy should be by means of a direct proceeding to avoid the instrument, or, in other words, by a proceeding

in equity. Until the instrument is annulled by a decree to that effect in a further proceeding, its legal effect remains unimpaired. It stands between the parties as a valid legal contract of settlement; and, in an action at law upon the original cause of action, the defendant may plead and rely upon it, and the court of law is bound to construe it and enforce it according to its legal effect. The legal effect of the release in this case is to bar the action of the plaintiff. The plaintiff seeks to avoid this result by evidence tending to show grounds for a rescission of the contract. This course may be open to him, but it must be sought in the proper method and forum, and this requires the institution of a direct proceeding for the purpose of avoiding the instrument. This view of the question requires the sustaining of the motion to strike out the evidence offered tending to show equitable grounds for the rescission of the contract, but which does not tend to show fraud in the mere execution of the instrument.

Under the facts of this case, if plaintiff so desires, the trial of the law action may be postponed, with leave to plaintiff to file a bill in equity for the purpose of attacking and testing the validity of the settlement had between the parties, and of the written release executed in connection therewith.

In view of the fact that this course may be pursued, it may be well for the court to express its views upon the question of the necessity of a tender being made by plaintiff of the money received by him, as a prerequisite to the exercise of the right of rescission, which question has been discussed by counsel at some length. It is not questioned that the general rule is that where a party seeks to rescind a contract on the ground of mistake or fraud, and thereby seeks to relieve himself of the burdens imposed by the contract, he should not be permitted to retain the benefits of the contract to the detriment of the other party to the transaction. Seeking equity, he must do equity. Therefore, the ordinary rule is that as a prerequisite to invoking the action of the court for the purpose of setting aside a contract, and thereby being relieved of the burdens thereof, the plaintiff must, so far as is reasonably within his power, place, or offer to place, the other party in the position he would have occupied if the contract had not been entered into. In short, if he would escape the burdens, he must give up the benefits, of the contract. The acts to be performed in the observance of this general rule are, of necessity, dependent upon the circumstances of the particular case. A court of equity is not insistent as to matters of form, if the substance of the duty is performed, and, furthermore, a court of equity can give due weight to exceptional cases which may demand an exceptional rule. The purpose of the general rule is to enable the court to do justice to both parties, so that, if the contract is set aside at the request of one party, the court may be able to restore the other party to the position he occupied before the contract was entered into, or otherwise the court may be made the instrument whereby great wrong may be wrought, in that the one party is freed from the performance of the contract on his part without being compelled to restore or account for the money or other

thing of value which he received by means of the contract which he now repudiates.

If the contract is of such a nature that by means thereof one party thereto is induced to pay a given sum of money to the other which he would not have paid except for the inducement of the contract, and, after the payment of the money, the party receiving the money seeks to rescind the contract, it is clear that, in justice and equity, he should be required to repay the money as a condition of rescission. There is a class of cases wherein the facts are such that the court, without a repayment or tender on part of the plaintiff, has it within its power to protect fully the interests of the other party in case of rescission, and in such cases the court may proceed to a hearing without requiring repayment or a tender. Illustrations of this class of cases may be found in Thackrah v. Haas, 119 U. S. 499, 7 Sup. Ct. 311, and Billings v. Smelting Co., 3 C. C. A. 69, 52 Fed. 250. The difference between that class of cases and the one at bar is marked and radical. This case is not one which involves the sale and transfer of property, wherein the court of equity having control over the property, and the distribution of the proceeds thereof, can adjust and protect the equities and rights of the parties. In this case, when the question of settlement was in treaty between the parties, the one party asserted a right of recovery against the other for personal injuries received, and the other denied all liability whatever. Under these circumstances, the defendant company was willing to compromise, and thereby buy its peace. The money was paid for the purpose of avoiding, not only the risk of damages being recovered by the plaintiff, but also to save the costs and expenses of litigation, even if the result should be favorable to the company. If the court, without requiring a repayment of the money paid on the settlement, or the equivalent, should hear the issue as to the validity of the settlement, and decree a rescission of the contract, then the plaintiff could prosecute his law action, and therein litigate the question of original liability. If the judgment was adverse to him on that question, he would still have in his possession the money paid him to procure a settlement, and thus, in effect, the company would have been deprived of all the benefits of the settlement without having secured to it the return of the money which it paid to secure the settlement. Cases have been cited in which it seems to be held that of this result the company cannot complain, upon the theory that the company had agreed that the plaintiff should in any event receive the sum paid him. This theory is not sustainable upon any fair consideration of the facts, nor in accordance with the well-recognized principles touching the settlement of disputed claims. It cannot be supposed for one moment that a railway company, or any other company or person, would pay several hundred dollars in way of settlement and for a release from all claims, if it was understood that, after the payment of the money, the other party could ignore the settlement, retain the money, and then sue on the original cause of action just the same as though no release had been executed. The law favors the settlement of claims by mutual arrangement, and the avoidance of litigation, and does so upon well-recog-

nized considerations of public policy. Why should the court be urged to adopt a course, the inevitable tendency of which would be to discourage settlements and promote litigation? We all know that, in carrying on the railway business of the country, many accidents occur to the trainmen which may not be attributable to the negligence of the company, or which may have been caused by the contributory negligence of the party injured, and yet the injury to the employe is undoubted. The tendency of the courts and of enlightened public sentiment is to encourage the railway companies in all cases of injury, regardless of the strict question of legal lia-·bility, to deal generously with the injured party; and in the passage of years I believe there is perceptible a marked improvement in this direction, and I do not think I overstate the result in saying that to-day settlements are reached in the majority of cases. If, however, it be now held that the company, by paying to the injured person a sum agreed upon between them as a discharge in full, cannot escape the costs and expense of litigation, but that it is open to the employe to make the settlement, to receive the money agreed to be paid, to execute a full written release of all claims, and then, without paying back the money received or the equivalent, can sue the company for damages, taking his chances of recovering, but not running the risk of losing the money paid him on the settlement in case he is defeated, all inducements to settle on part of the company will be removed. If it be held that the plaintiff in this case, after making a settlement and receiving the sum agreed upon, can ignore the same, and, without repaying the money paid to secure the settlement and release, can bring an action at law upon the original cause of action, and take the chances of a jury finding for him upon the issue of fraud in the settlement as well as upon the issue of liability for the accident, without running any risk of having to repay the money already paid him in case the decision is against him, it is clear that mutual settlements in this class of cases will be greatly discouraged, and litigation will be increased,—results which, upon the ground of public policy alone, are sufficient to require that such a rule should not be adopted.

The same conclusion is reached if we look only to the strict rights of the parties to the record. As already said, the company, in order to avoid the costs of litigation, as well as to escape being held liable in damages in a sum beyond that paid to the plaintiff, entered into the settlement and paid the sum agreed upon. If, now, the plaintiff can, with impunity, subject the defendant to all the costs and expense necessary to meet the charge of negligence in connection with the accident, to that extent the defendant is deprived of the benefit of the settlement agreed upon. Before the plaintiff should be permitted to repudiate the settlement, and involve the defendant in costs and expense, he should place matters in such shape that the court, in case a rescission of the contract is ordered, will be enabled to place the defendant in the position occupied before the settlement was made. Nothing short of this will ordinarily do justice between the parties, and therefore the safer and better practice is to enforce the general rule that, where a party seeks to set aside

a settlement and release knowingly and intentionally executed by him, the other party having performed the conditions on his part, on the ground of misrepresentations such as are charged in this case, it is incumbent upon the party seeking the rescission to repay the money paid him as the consideration for the release; and if, upon tender being made, it is not accepted, the tender should be kept good, so that the court, in its final decree, may properly protect the rights of both parties.