HILL et al. v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. March 17, 1902.)

No. 695.

1. FEDERAL COURTS—CONFORMITY TO STATE PRACTICE.

Rev. St. § 914, requiring the practice in the federal courts to conform as nearly as may be to the state practice, was not designed to abolish in the federal courts the distinction between actions at law and suits in equity.

**2. RELEASE—AVOIDANCE FOR FRAUD—CONDITIONS PRECEDENT.**

A party executing a release to a railroad company for a claim for personal injuries cannot avoid it, as obtained by false and fraudulent representations, unless he first returns or offers to return the money received as the consideration for its execution.

In Error to the Circuit Court of the United States for the Northern District of Washington.

Lewis, Hardin & Albertson, for plaintiffs in error.

B. S. Grosscup, for defendant in error.

Before McKENNA, Circuit Justice, and GILBERT and ROSS, Circuit Judges.

ROSS, Circuit Judge. This was an action at law, commenced in one of the courts of the state of Washington to recover damages growing out of the death of Alexander H. Hill, who was the husband of one of the plaintiffs and the father of the other, alleged to have been caused by the negligence of the defendant railroad company, on whose motion the case was transferred to the court below. The deceased was a brakeman, and was on top of a car as the train was passing along a portion of the track between a tunnel and a snowshed, from which position he was thrown and killed in entering the shed. The defendant answered, denying any negligence on its part, alleging that the decedent's death was caused by his own negligence, and as an affirmative defense set up that on and prior to July 8, 1897, the plaintiffs' claims for damages growing out of the death of the deceased were taken up and discussed between the defendant and the plaintiff Teresa Hill, "as an individual and as the surviving widow of said Alexander H. Hill, and also as the guardian of Maud Isabel Hill" (the other plaintiff), resulting in a compromise and settlement between the parties, by the terms of which it was agreed that $700 should be paid to her as the surviving widow of the deceased, and $500 as the guardian of his minor child, Maud Isabel, in full satisfaction of all damages occasioned by the death of Alexander H. Hill, which respective sums of money were so paid by the defendant railroad company, in consideration of which the plaintiff Teresa Hill thereupon executed two releases and satisfactions in writing,—one on her own behalf, and the other for and on behalf of her ward, Maud Isabel Hill, being thereto authorized by the probate court, which had appointed her such guardian. Each of the releases expressly states that the plaintiff Teresa Hill was fully informed in respect to all of the facts attending the accident by which the deceased lost his life, which facts had been stated to counsel, who advised the compromise and settlement of the claims for damages, and that the moneys so paid by the defendant railway company and received by her were in full satisfaction of the claims. To this affirmative defense the plaintiffs filed in the court below a reply, in which was admitted the execution of the releases in pursuance of the alleged compromise agreement, and the payment and receipt of the respective sums of money as alleged in the defendant's answer, but which denied that the money was received by the plaintiff Teresa Hill, either as guardian or in her own right, "by or with the advice of counsel," or that she had at the

time of the execution of the releases full knowledge as to the manner in which the accident occurred, and by way of new matter, and as a further and affirmative reply to the affirmative defense of the defendant company, the plaintiff alleged that after the death of her husband, acting for herself and their minor child, the plaintiff Teresa seasonably and diligently investigated to the best of her ability the facts and circumstances surrounding the accident; that she had no means at or after the time of the accident of ascertaining whether warning devices, called "telltales," were suspended in their proper place across the track of the defendant's road over which the train on which the deceased was a brakeman had to pass in going from the tunnel to the snowshed, except from the statements of employés of the defendant company, for the reason that within a few hours after the accident telltales were placed across the track at the point referred to, of which fact the plaintiffs were kept in ignorance by the express direction of the defendant company; that at the time of the accident no such telltales or other warning devices were in place, of which fact the plaintiffs were likewise kept in ignorance; that after the accident the agent of the defendant company having in charge the settlement of such claims for damages persistently sought a compromise and settlement of the plaintiffs' claims, and in so doing repeatedly represented to the plaintiff Teresa that the telltales were in their proper place at the time of the accident, and that the deceased was thereby seasonably warned of his proximity to the mouth of the snowshed, and that his death was solely due to his failure to heed the warning thus given; that these and other like representations were wholly false, and so known to be, by the defendant company's agent, and were so made for the fraudulent purpose of securing a compromise and settlement of the plaintiffs' claims; and that it was solely by reason of such fraudulent representations, relied on by the plaintiffs as being true, that the settlement was agreed to and the releases executed. The reply also alleges that the proceedings in the probate court in respect to the authorization and confirmation of the settlement of the claim of the minor plaintiff for damages were taken by the attorneys for the defendant company, and were never examined by any attorney for either of the plaintiffs. It admits it to be true that the plaintiff Teresa Hill consulted counsel shortly after the accident in regard to the liability of the defendant company, and that "upon the facts of the case as they then appeared to her, and as they had been represented to her" by the defendant, her counsel advised that it was doubtful whether the defendant was liable; but that the true facts were not then known to her or her counsel, and were not discovered until a few days before the commencement of this action. The reply of the plaintiffs to the affirmative defense of the defendant contains no averment of a tender of the money received by them upon the compromise and settlement, nor any offer to return the money so received, but does aver a willingness on the part of the plaintiffs "to deduct from the amount to which they are entitled by reason of their damages as set forth in the complaint (alleged to be $20,000 in all) said sum of $700 and said sum of $500, together with interest thereon at the legal rate from July 8, A. D. 1897, and hereby credit said sums, with interest, upon their claims against said defendant for the afore-

said damages." The court below (104 Fed. 754) sustained a demurrer to the reply, which ruling presents the question for decision.

It is conceded that under the provisions of the statute of the state of Washington, as well as a number of other states, a release of a right of action may be avoided in an action at law by showing that it was obtained by means of false and fraudulent representations; and the position is taken on behalf of the plaintiffs in error that the same right exists in the federal courts by virtue of section 914 of the Revised Statutes, which provides that:

"The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit and district courts are held, any rule of court to the contrary notwithstanding."

It is thoroughly settled that it was not the design of this section to abolish, in the federal courts, the distinction between actions at law and suits in equity. Robinson v. Campbell, 3 Wheat. 212, 4 L. Ed. 372; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; Sheffield v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853; Lindsay v. Bank, 156 U. S. 485, 15 Sup. Ct. 472, 39 L. Ed. 505; Shampeau v. Lumber Co. (C. C.) 42 Fed. 760; Johnson v. Granite Co. (C. C.) 53 Fed. 569; Messinger v. Insurance Co. (C. C.) 59 Fed. 529; Vandervelden v. Railroad Co. (C. C.) 61 Fed. 54; In re Foley (C. C.) 76 Fed. 390; Kosztelnik v. Iron Co. (C. C.) 91 Fed. 606. It is true that in an action at law in a federal court a release, with or without seal, or any deed to which the plea of non est factum may apply, is subject to annulment upon proof of fraud in the execution of the instrument; and in the late case of Wagner v. Insurance Co., 33 C. C. A. 121, 90 Fed. 395, the circuit court of appeals for the Sixth circuit held that where, as in the present case, the issue involves simply a question of fraud between the parties, it is proper, in an action at law, for the plaintiff to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud is in the execution or in misrepresentation as to material facts inducing the execution. That ruling seems to be in conflict with the cases of George v. Tate, 102 U. S. 564-570, 26 L. Ed. 232; Hartshorn v. Day, 19 How. 211, 222, 15 L. Ed. 605; Ivinson v. Hutton, 98 U. S. 82, 25 L. Ed. 66; Shampeau v. Lumber Co. (C. C.) 42 Fed. 760; Johnson v. Granite Co. (C. C.) 53 Fed. 569; Vandervelden v. Railroad Co. (C. C.) 61 Fed. 54; Kosztelnik v. Iron Co. (C. C.) 91 Fed. 606,—relied on, among others, by counsel for the defendant in error. We find it unnecessary in this case to decide whether the question of fraud leading up to and inducing the execution of such instruments may be inquired into and determined in an action at law in a federal court, for the reason that, conceding that it may be, good faith and fair dealing would require the plaintiff, as a condition precedent to the presentation and maintenance of such an issue, to return or offer to return the money received in consideration of the instruments. In considering a similar question the court, in the case of Barker v. Railroad Co. (C. C.) 65 Fed. 460, said:

"But there is another insurmountable obstacle in the complainant's way upon this feature of this case, and that is, although she desires to set aside the contract of release, she still retains the consideration and has never offered to return it. Where a party attempts to rescind a contract, the rescission must be complete. He cannot affirm it in part and reject it in part. Common honesty would require him, seeking to escape the burdens of the contract, to return the benefits which he has received. This is not only a rule of common honesty and fairness, but has been recognized by the courts from time immemorial. There are some few exceptions where railroads have been involved, but they simply illustrate that courts sometimes give way to sentiment, and allow compassion and sympathy to rule, instead of tranquil judgment; and these offers of restitution should come promptly, not reluctantly or tardily. To withhold a restitution is to exhibit a want of confidence in the integrity and justness of his case, who complains of a contract, and seeks to set it aside because of fraud. Vandervelden v. Railroad Co. (C. C.) 61 Fed. 54; Johnson v. Granite Co. (C. C.) 53 Fed. 569; Gould v. Bank, 86 N. Y. 75; Cobb v. Hatfield, 46 N. Y. 533; Thayer v. Turner, 8 Metc. (Mass.) 550; Kimball v. Cunningham, 4 Mass. 502, 3 Am. Dec. 230; Doane v. Lockwood, 115 Ill. 490, 4 N. E. 500; Railway Co. v. Hayes (Ga.) 10 S. E. 350; Burton v. Stewart, 3 Wend. 236, 20 Am. Dec. 692; Bain v. Wilson, 1 J. J. Marsh. 202; Jarrett v. Morton, 44 Mo. 275; Hart v. Handlin, 43 Mo. 171; Estes v. Reynolds, 75 Mo. 563; Kerr, Fraud & M. 366."

And in Vandervelden v. Railroad Co. (C. C.) 61 Fed. 54, the court applies the general rule, and refers to a class of cases where it may not be necessary, by reason of the peculiar facts, to enforce it strictly. It is there said:

"It is not questioned that the general rule is that where a party seeks to rescind a contract on the ground of mistake or fraud, and thereby seeks to relieve himself of the burdens imposed by the contract, he should not be permitted to retain the benefits of the contract to the detriment of the other party to the transaction. Seeking equity, he must do equity. Therefore the ordinary rule is that as a prerequisite to invoking the action of the court for the purpose of setting aside a contract, and thereby being relieved of the burdens thereof, the plaintiff must, so far as is reasonably within his power, place or offer to place the other party in the position he would have occupied if the contract had not been entered into. In short, if he would escape the burdens, he must give up the benefits, of the contract. The acts to be performed in the observance of this general rule are, of necessity, dependent upon the circumstances of the particular case. A court of equity is not insistent as to matters of form, if the substance of the duty is performed, and, furthermore, a court of equity can give due weight to exceptional cases which may demand an exceptional rule. The purpose of the general rule is to enable the court to do justice to both parties, so that, if the contract is set aside at the request of one party, the court may be able to restore the other party to the position he occupied before the contract was entered into, or otherwise the court may be made the instrument whereby great wrong may be wrought, in that the one party is freed from the performance of the contract on his part without being compelled to restore or account for the money or other thing of value which he received by means of the contract which he now repudiates. If the contract is of such a nature that by means thereof one party thereto is induced to pay a given sum of money to the other, which he would not have paid except for the inducement of the contract, and, after the payment of the money, the party receiving the money seeks to rescind the contract, it is clear that in justice and equity he should be required to repay the money as a condition of rescission. There is a class of cases wherein the facts are such that the court, without a repayment or tender on part of the plaintiff, has it within its power to protect fully the interests of the other party in case of rescission, and in such cases, the court may proceed to a hearing without requiring repayment or a tender. Illustrations of this class of cases may be found in Thackrah v. Haas, 119 U. S. 499, 7 Sup. Ct. 311, 30 L. Ed. 486, and Billings v. Smelting

Co., 3 C. C. A. 69, 52 Fed. 250. * * * If the judgment was adverse to him on that question, he would still have in his possession the money paid him to procure a settlement, and thus, in effect, the company would have been deprived of all the benefits of the settlement, without having secured to it the return of the money which it paid to secure the settlement. Cases have been cited in which it seems to be held that of this result the company cannot complain, upon the theory that the company had agreed that the plaintiff should in any event receive the sum paid him. This theory is not sustainable upon any fair consideration of the facts, nor in accordance with the well-recognized principles touching the settlement of disputed claims."

No fact is alleged in the reply that brings this within the case of Thackrah v. Haas, 119 U. S. 499, 7 Sup. Ct. 311, 30 L. Ed. 486, and like cases. Whatever exceptions there may be to the general rule certainly should not embrace a case like the present one, where a trial might establish that the plaintiffs have no valid claim, and at the same time leave the defendant's money in the plaintiffs' pockets.

The judgment is affirmed.