## HECK v. MISSOURI PAC. RY. CO.

### (Circuit Court, D. Colorado. October 1, 1906.)

### No. 4,776.

**1. RELEASE—PLEADING IN AVOIDANCE OF DEFENSE.**

A reply in avoidance of a release set up in the answer must confess the execution of such release, and that directly and not hypothetically, and a reply alleging that "if" the release was given it was obtained by fraud, etc., is bad.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Release, §§ 90–92.]

**2. SAME—AVOIDANCE—RETURN OF CONSIDERATION AS CONDITION PRECEDENT.**

As a condition precedent to the right to avoid a release pleaded as a defense, and admittedly based on a consideration paid, the plaintiff must return or offer to return such consideration.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Release, §§ 38, 45.]

**3. SAME—NEGLIGENT FAILURE TO READ.**

A plaintiff, who, on receipt of a sum of money from defendant, signed a written release of a cause of action for a personal injury, without reading the same, is chargeable with negligence which precludes the avoidance of such release on the ground that its contents were misrepresented by defendant's agent without a showing in excuse of the failure to read the same or to have it read before signing.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Release, § 32.]

**4. SAME—VALIDITY—FALSE REPRESENTATIONS.**

The fact that a plaintiff was induced to sign a release by false or fraudulent representation as to its contents or purport will not render it void or avoid its effect as a defense in an action at law, where it was signed knowingly and intentionally, and upon a consideration paid, although it may afford ground for cancellation in equity.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Release, § 32.]

At Law. On motion to strike out reply.

Skelton & Morrow, for plaintiff.
Thos. H. Devine and Henry A. Dubbs, for defendant.

LEWIS, District Judge. Trespass on the case. The answer pleads accord and satisfaction, the payment of $130 by defendant to plaintiff, and, in consideration thereof, a written release by plaintiff of the damages in question. The replication attempts the plea of confession and avoidance, alleging that if the release was obtained from the plaintiff, it was by artifice, fraud, deceit, and by false and fraudulent representations made to plaintiff by defendant and its agents.

1. The plea is bad. It does not give color. 1 Chitty on Pleadings (16 Am. Ed.) bot. pp. 677, 678, 679:

"A plea of this description is either in justification or excuse of the matters alleged in the declaration, as, imprisonment under a magistrate's warrant, or son assault demesne in trespass; or it is in discharge of the cause of action by subsequent matter, as accord and satisfaction, or a release. It is observable that each of these pleas admits the mere facts stated in the declaration, as that the defendant committed the trespass charged; that the contract was made or the debt was incurred, etc. But the matter which they allege by way of defense defeats or avoids the legal effect of those facts and disproves, if true, the plaintiff's right of action. As a part of this rule, that a plea must either

traverse or deny, or confess and avoid, it was held that a plea of discharge under an insolvent act from liability to perform the promises laid in the declaration must expressly confess such promises to have been made, and this not hypothetically ; and that, therefore, a plea of discharge from the alleged premises, 'if any such were made,' was demurrable. So, very recently a plea of the statute of limitations, alleging that the cause of action, 'if any such there be,' did not accrue, etc., was bad on special demurrer. * * * An important rule of pleading is deducible from the principle that a plea in bar must traverse, or confess and avoid, the matter to which it is applied, namely, that a plea in confession and avoidance must give color. * * * It is plain that a plea which shows new matter in avoidance or discharge of the plaintiff's allegations is double and argumentative, if it do not admit the apparent truth of those allegations as matter of fact. There can be no occasion to adduce grounds for defeating the operation of disputed facts. The plea in avoidance must, therefore, give color to the plaintiff; that is, must give him credit for having an apparent or prima facie right of action, independently of the matter disclosed in the plea to destroy it."

The plea is also bad as being hypothetical. Bliss on Code Pleading (2d Ed.) § 317, gives the following as hypothetical pleas, and therefore bad:

"If there has been an escape, that there has also been a return; or if the plaintiffs are the owners and holders of a promissory note named, etc., the said note was obtained by fraud, etc."

See, also, 4 Enc. Pl. & Pr. 671, for the requisite elements of a plea of this kind.

2. In this plea the plaintiff admits that she received from the defendant $130 on the execution of the settlement and release. She, however, denies that the release pleaded embodies the contract she made. The defendant in its answer says it does. The plaintiff does not allege that she returned to the defendant, or tendered to it before instituting this suit, the money she received, nor did she make deposit in court of that sum for the use of defendant at the time she instituted this action. The release, based on a valuable consideration as pleaded in the answer, makes prima facie a good defense to the cause of action set up in the declaration. The defendant's plea of accord and satisfaction, if not traversed, is a complete bar; and if met with the plea of confession and avoidance, the burden is on the defendant to establish the matters in avoidance. So that, as to the artifice, fraud, deceit, and fraudulent representations, the presumption is against plaintiff. The plaintiff must overcome the contract of settlement. It stands till then. The written contract raises a presumption against her. The burden is on her to overcome it. The parties, under the present legal aspect of the case, made a settlement of the damages claimed, and plaintiff has been paid the amount agreed on therefor. She retains the money paid her, and at the same time asks to be relieved from the contract of settlement, and now seeks judgment for the same damages that have been adjusted; which, so far as the case now stands, are by agreement fully covered and represented by the $130 in her hands. Prima facie, therefore, she asks to litigate with the defendant for the money which defendant has already paid her and which she now holds. It is true she asks for more, but in contemplation of law while the release contract stands, she has been fully compensated.

At present that contract stands against her as a conclusion, notwith-standing her allegations of fraud. She may have taken from the defendant a sum grossly inadequate for the damages suffered, but there is no presumption to that effect at this time; and we cannot presume a fact to be true, which she must prove, and which is a prerequisite to her right to litigate as to the amount of damages.

The objection of the plea is that now, at the very threshold of the case, it appears that she seeks the compensation already made to her and still retained by her. This she cannot do. For this reason also the plea is bad.

In Barker v. Northern Pac. Ry. Co. (C. C.) 65 Fed. 460, it was said:

"But there is another insurmountable obstacle in the complainant's way upon this feature of this case; and that is although she desires to set aside the contract of release, she still retains the consideration, and has never offered to return it. Where a party attempts to rescind a contract, the rescission must be complete. He cannot affirm it in part and reject it in part. Common honesty would require him seeking to escape the burdens of the contract, to return the benefits which he has received. This is not only a rule of common honesty and fairness, but has been recognized by the courts from time immemorial. There are some few exceptions where railroads have been involved, but they simply illustrate that courts sometimes give way to sentiment, and allow compassion and sympathy to rule instead of tranquil judgment. These offers of restitution should come promptly, and not reluctantly or tardily. To withhold a restitution is to exhibit a want of confidence in the integrity and justness of his case, who complains of a contract, and seeks to set it aside because of fraud."

In Hill v. Northern Pac. Ry. Co., 113 Fed. 914, at page 917, 51 C. C. A. 544, at page 547, it is said: "Good faith and fair dealing would require the plaintiff, as a condition precedent to the presentation and maintenance of such an issue, to return or offer to return the money received in consideration of the instrument."

In Vandervelden v. Chicago & N. W. Ry. Co. (C. C.) 61 Fed. 54, 59, we find the following:

"If the contract is of such a nature that by means thereof one party thereto is induced to pay a given sum of money to the other, which he would not have paid except for the inducement of the contract, and after the payment of the money the party receiving the money seeks to rescind the contract, it is clear that, in justice and equity, he should be required to repay the money as a condition of rescission."

In Johnson v. Granite Co. (C. C.) 53 Fed. 569, at page 572, Judge Putnam said:

"And so I prefer to rest the case upon the fact that the amount received by the plaintiff was not repaid, or tendered back, before suit was commenced. That the law of this state requires this is positively settled in Brown v. Ins. Co., 117 Mass. 479, and Mullen v. R. R. Co., 127 Mass. 86, 34 Am. Rep. 349, and was evidently the theory of the court in Larrabee v. Sewald, 66 Me. 376, cited by the plaintiff. In Snow v. Alley, 144 Mass. 546, 11 N. E. 764, 59 Am. Rep. 119, it is said that where the consideration given is a mere promissory note, it need not be tendered back until the trial, because it has itself no intrinsic value; but nothing in this case contravenes the earlier decisions referred to."

It is not deemed necessary to review the authorities relied on and cited in the cases above mentioned. An able discussion of the ques-

tion under consideration may be found in the dissenting opinion of Judge Burgess in Girard v. Car Wheel Co. (Mo.) 27 S. W. 648, 25 L. R. A. 514, 45 Am. St. Rep. 556, concurred in by Gantt and Sherwood. The conclusion there reached, after an exhaustive review of the authórities, was stated as follows:

"It will thus be seen that the authorities are almost unanimous in holding that where money or other valuable thing is paid on the settlement to obtain a release of any right of action, before the person to whom it is paid, and who has the right of action, can recover it, he must return or offer to return whatever he has received, if of any value; and this he must do although the settlement or release was obtained by fraud. And it is also manifest from the decided weight of authority that the offer to return whatever of value has been received as a consideration for the settlement or release, must be made before or at the time the suit is brought, and the contract or agreement, in so far as it lies in the power of the party desiring to do so, rescinded."

These views were subsequently adopted by that court in Och v. M. K. & T. Ry. Co., 130 Mo. 27, 31 S. W. 962, 36 L. R. A. 442. It was there said:

"And if the release in this case is to be canceled, the parties should be put in statu quo [citing cases]. The rule undoubtedly is that where a party seeks to rescind a contract on the grounds of fraud or imposition, he must tender a return of what he has received under it, before he can maintain an action at law; and in an action in equity he must at least tender a return by his bill of complaint."

This same question was raised in Union Pac. Ry. Co. v. Harris, 63 Fed. 800, 12 C. C. A. 598, and St. Louis Ry. Co. v. Phillips, 66 Fed. 35, 13 C. C. A. 315. But Judge Caldwell, who spoke for the court, declined to pass upon it because it had not been raised on the trial. We know of no reason why this principle should not have recognition in suits at law, as well as in equity.

3. There is another objection to this plea in the replication. The artifice, fraud, and deceit, and false and fraudulent representations on which the plaintiff relies to avoid the release, are fully set forth in the following language:

"After the accident mentioned in said amended complaint plaintiff continued her journey to Victor, Colo., where she was confined to her bed, and where she continued to suffer great and excruciating pain and agony until long after the time hereinafter mentioned. That while she was so confined to her bed, and while so suffering, as aforesaid, from said injuries, some person claiming to be an agent of the defendant, but whose name is to plaintiff unknown, called on plaintiff at Victor, Colo., at about the date mentioned in said answer, to wit, May 27, 1904, and stated to her that he had been informed that she had been injured in the wreck mentioned in the amended complaint. That the defendant company desired to aid and assist in every way possible all those who received any injury at said time. That he was instructed by the defendant company to procure such medical attendance as she might desire. That for the purpose of determining the extent of her injuries he would at once call in a physician. That he thereupon called in a doctor who, at his request, made an examination of the plaintiff for the alleged purpose of determining the extent of her injuries, and how long she would be confined to her bed on account of said injuries, in order that said alleged agent might be able to determine what her expenses would be during said time. That said doctor told plaintiff and said agent of the defendant that it was his opinion that plaintiff would recover from said injuries in from four to six weeks from said date. That thereupon said agent estimated that her expenses for board, nursing, and medical attendance during said six weeks

would amount to about $130, and he thereupon offered to pay said plaintiff said sum of $130 for the purpose of covering her expenses during said six weeks, and he then and there told plaintiff that if she did not recover in said estimated time of six weeks to inform him thereof, and he would see that the defendant continued to pay her expenses until she fully recovered. That said sum was paid to her to, cover her expenses during said six weeks, and not as compensation for the injuries she sustained, or for any other damages sustained by her on account of her said injuries, nor was there anything said by said agent, or by anybody else, that would indicate that said agent intended said sum to compensate her for the injuries she received, or for any damages sustained by her, except the payment of her expenses for said six weeks in which it was estimated she would recover; nor was said sum received by plaintiff as compensation for said injuries, or for any damages sustained by her on account of said injuries, but was received for the sole purpose of paying her expenses during said estimated six weeks in which she expected to recover. That when said agent paid plaintiff said sum of $130 he presented her a paper for her signature which he had so rolled and folded as to conceal the contents thereof from plaintiff, and when plaintiff inquired what said paper contained, and whether she could read the same, said agent explained that she was suffering too much to go to the trouble of sitting up to read said paper, that it was only a receipt for the money he had paid her, that he would not have her sign it at all, but it was necessary for him to turn it in to the company to show where the money went. That plaintiff was at said time unfamiliar with business methods, and had no suspicion that said agent was seeking to take an unfair advantage of her as he had assured her that he was endeavoring to do everything for her benefit, and she believed he was only looking after her welfare and comfort. That she was at said time suffering so much pain and agony, and her nerves were so shocked and affected by said injuries that she was incapable of exercising any independent judgment as to the proper course to pursue with reference to said matter, and having been entirely disarmed of any suspicion whatever of unfair dealing, and relying implicitly and absolutely on the statements of said agent as to what said paper contained, and believing that said paper so presented to her was nothing but a receipt for said $130 paid to her by said agent, and that it contained nothing inconsistent with the statements made by said agent, she signed the same, without having read or known its contents. That said paper signed at said time is the only one which she ever signed which could contain the contract mentioned and described in said answer of the defendant, and if said paper so signed by her at said time contained or embodied the contract mentioned in the answer, it was obtained by the artifice, fraud, deceit, and fraudulent representations of the agent of the defendant who induced her to sign the same as aforesaid, and it is void and of no effect."

It will be observed that the only allegation made for the purpose of showing a trick, artifice, fraud and false representations touching the immediate execution of the release, is as follows:

"He [defendant's agent] presented her a paper for her signature which he had so rolled and folded as to conceal the contents thereof from the plaintiff, and when plaintiff inquired what said paper contained, and whether she could read the same, said agent explained that she was suffering too much to go to the trouble of sitting up to read said paper, that it was only a receipt for the money he had paid her."

It is nowhere alleged that the plaintiff was unable to read the release. No reason is assigned why she did not ask some one present to read it. This was negligence on her part.

"A party who blindly executes an instrument without examination has only his own folly and neglect to complain of." Dingle v. Trask, 7 Colo. App. 16–21, 42 Pac. 186.

"A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it. * * * If one can read his contract his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practised by the opposite party. If he cannot read it, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so; and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." Chicago, St. P. M. & O. Ry. Co. v. Belliwith, 83 Fed. 437–439, 440, 28 C. C. A. 358, 361.

"A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection if the purchaser does not avail himself of those means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another." Slaughter v. Gerson, 13 Wall. (U. S.) 379–383, 20 L. Ed. 627.

"The law does not afford relief to one who suffers by not using the ordinary means of information, whether his neglect be attributable to indifference or credulity, nor will industrious activity in other directions, to the neglect of such means, be of any avail." Andrus v. Smelting Co., 130 U. S. 643, 647, 9 Sup. Ct. 645, 646, 32 L. Ed. 1054.

"It is further insisted that, by proper diligence, appellees could have ascertained the truth or falsity of the representations, before entering upon the contract. When the means of knowledge are at hand, and equally available to both parties, and the subject about which the representations were made is open to their inspection, if the party to whom the representations are made does not avail himself of those means and opportunities, he will not be heard to say that he has been deceived by the misrepresentations. If, having eyes, he will not see matters directly before them, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another." Sellers v. Clelland, 2 Colo. 532–544.

"If the purchaser has full opportunity of examining the goods, and can easily and readily ascertain their quality and value by inspection, and he neglects to do so, then any injury which he may sustain by such negligence is the result of his own folly, and he can have no relief at law" Reynolds v. Palmer (C. C.) 21 Fed. 433–434.

"Again, relief will not be given against a mistake, where the party complaining had within his reach the means, or at hand the opportunity, of ascertaining the true state of facts and neglected to take advantage of them." Barker v. Northern Pac. Ry. Co. (C. C.) 65 Fed. 460–463. See, also, Chicago & A. Ry. Co. v. Green (C. C.) 114 Fed. 676–680.

All other allegations as to fraud, artifice, and deceit are extraneous the immediate execution of the release. Can they be considered as a proper plea here?

In George et al. v. Tate, 102 U. S. 564, 26 L. Ed. 232, we find the following:

"Proof of fraudulent representations by Myers and Green, beyond the recitals in the bond, to induce its execution by the plaintiff in error, was properly rejected. It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give. Hartshorn v. Day, 19 How. (U. S.) 211, 15 L. Ed. 605; Osterhaut v. Shoemaker, 3 Hill. (N. Y.) 513; Belden v. Davis, 2 Hall (N. Y.) 466; Franchot v. Leach, 5 Cow. (N. Y.) 506. The remedy is by a direct proceeding to avoid the instrument."

Judge Hanford in Hill v. Northern Pac. Ry. Co. (C. C.) 104 Fed. 754–756, puts it thus:

"I consider that the Supreme Court of the United States has given a just rule applicable in the decision of this question. The rule makes a distinction between cases where the execution of a written instrument has been obtained by trick or fraud, to which the assent of the party executing it was not given intentionally, and cases where instruments have been executed intentionally and understandingly, but where the mind of the party has been affected and assent secured by means of false representations and deceit, and holds that in cases where the execution of an instrument has been obtained by fraud or trick, without the assent of the party executing it, the instrument is entirely void, and should be disregarded in an action at law in which a plea of non est factum has been interposed, but in cases of the other class, written instruments intentionally executed are only voidable at the option of their makers, and effect must be given to them as valid instruments until they are annulled by a judicial decree in a direct proceeding for the purpose. Hartshorn v. Day, 19 How. (U. S.) 211, 15 L. Ed. 605; George v. Tate, 102 U. S. 564–571, 26 L. Ed. 232. The decision in the case of Railway Co. v. Harris, 158 U. S. 326–333, 15 Sup. Ct. 843, 39 L. Ed. 1003, is in harmony with the previous decisions of the Supreme Court, and my attention has not been called to any cases in which the Supreme Court has departed from the above rule. With all due respect for the decision of the Circuit Court of Appeals for the Sixth Circuit, in the case of Wagner v. Ins. Co., 90 Fed. 395, 33 C. C. A. 121, this court must be bound by the law as it has been declared by the highest court in this country."

Kosztelnik v. Iron Co. (C. C.) 91 Fed. 606, 607: "Under the pleadings as they now stand, upon proof of the release on the trial, the plaintiff will be permitted to show any fraud touching the execution of the instrument, but will not be entitled to show that he was induced to make the contract of release by fraudulent representations, which would constitute an equitable, and not a legal, defense. Shampeau v. Lumber Co. (C. C.) 42 Fed. 760; George v. Tate, 102 U. S. 564–570, 26 L. Ed. 232. If the plaintiff seeks to avoid the release by reason of false representations, whereby he was induced to make the

contract, he must pursue his remedy by a suit in equity." A demurrer to the replication in this case was sustained, and the ruling affirmed by the Court of Appeals for the Ninth Circuit. 113 Fed. 914, 51 C. C. A. 544. See, also, Johnson v. Granite Co., 53 Fed. 569.

The plaintiff did not sign the release under such circumstances, according to the replication, as to render the same void. "A void contract may be disregarded by either party, a voidable contract cannot be. It will scarcely be contended that defendant company could have maintained an action against the plaintiff for the money paid on the contract of settlement under these circumstances. No executed contract where a valuable consideration has passed, made between the parties competent to contract, not immoral or prohibited by statute, nor against public policy, is void between the parties thereto however fraudulently it may have been obtained." Och v. Railway Co., supra.

The release agreement is, therefore, not void; that is, incapable of confirmation or ratification. For, under the facts pleaded in the reply, the plaintiff is held in this forum to have intended to execute the instrument which she signed. These facts, aside from the trick, artifice, and deceit pleaded, are not such as can here be made available to her. They might be considered in equity for purposes of cancellation. A device, trick, or artifice employed in the execution of a contract will render it void, but a void contract needs no decree of annulment. It is this latter kind of a contract, which is not a contract in fact, though one in form, that can be dealt with in a law action primarily. The facts touching the execution of such a contract are available at law to the injured party under the plea of non est factum; and this is the conclusion in George v. Tate, supra, and in Johnson v. Granite Co., supra. This principle is directly announced in Shampeau v. Lumber Co. (C. C.) 42 Fed. 760. See, also, Hill v. Railway Co., 113 Fed. 914–917, 51 C. C. A. 544. The same conclusion is reached in Och's Case, supra, and in the dissenting opinion in the Girard Case, supra, in both of which a very lucid and able review of the authorities may be found. See, also, Levi v. Mathews (C. C. A.) 145 Fed. 152–154.

Thus the line between the two jurisdictions is well marked, and the practise in one does not encroach upon that of the other. I therefore conclude (a) that the only trick, artifice or deceit going to the immediate execution of the release, as pleaded, cannot be availed of by the plaintiff, for to do so would relieve her from her own negligence at the time; (b) that all other allegations of fraud and fraudulent representations are of facts not in nor connected with the execution of the instrument, and from which she cannot obtain relief in this forum; (c) that as to such facts her only remedy is in equity.

For the foregoing reasons, the motion of the defendant to strike the plea is sustained.

It is so ordered.