# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS THE DISTRICT COURTS, AND THE COMMERCE COURT

---

STANDARD PORTLAND CEMENT CORPORATION v. EVANS et al.

(Circuit Court of Appeals, Ninth Circuit.   May 5, 1913.)

No. 2,235.

**1. ACTION (§ 24*)—EQUITABLE DEFENSES—AVAILABLE AT LAW.**

Where, in an action on certain corporate notes, facts alleged in defense did not show that the notes were not executed by the corporation, or that their execution was procured by any trick or fraud, so as to render them void and present a defense available under a plea of non est factum, but rather that the corporation's assent to their execution was procured by fraud and deceit, and that one of the corporation's officers, in executing the notes, was influenced by fraudulent motives, the defense was only available in equity under the rule that the only fraud permissible at law is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 153–155; Dec. Dig. § 24.*]

**2. COURTS (§ 24*)— EQUITABLE DEFENSE — ACTION AT LAW—JURISDICTION—CONSENT OF PARTIES.**

Jurisdiction of an equitable defense to certain notes· sued on cannot be conferred on a court of law by waiver or consent of the parties.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 76–78; Dec. Dig. § 24.*]

In Error to the District Court of the United States for the Second Division of the Northern District of California;   William C. Van Fleet, Judge.

Action by Ernest E. Evans and others, doing business as Evans, Coleman & Evans, against the Standard Portland Cement Corporation.   Judgment for plaintiffs, and defendant brings error.   Affirmed.

The defendants in error brought an action to recover upon four promissory notes, aggregating $39,000, executed by the plaintiff in error and indorsed by W. J. Dingee and Irving ·A. Bachman.   The notes were dated May 1, 1908, and were due one year from date.   One was executed to Evans, Coleman & Evans for $30,000, one to Charles D. Rand for $5,000, one

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

205 F.—1

to T. R. Stockett for $3,000, and one to Thomas Graham for $1,000. The last three notes were indorsed to the defendants in error. The plaintiff in error filed an answer denying some of the allegations of the complaint, and setting up new matter by way of an affirmative defense, alleging that the execution of the notes was induced by means of a conspiracy and scheme to defraud the plaintiff in error, and that there was want of legal authorization for their execution. After the issues were framed in that action, the plaintiff in error, conceiving that its equitable defenses must be set up by a separate bill on the equity side of the court, filed its bill in equity, setting up the same and other matters as defenses to the notes, and alleging that they were executed ultra vires and contrary .to public policy, and praying for an injunction against· the further prosecution of the law action. The defendants in error answered the bill. It was then stipulated that the law action and the equity suit should be referred for trial to the master in chancery as a referee, and that they should be tried together at the same time. But the order of reference provided that the findings of fact and conclusions of law of the referee should in each case be advisory of the court only, and of the same effect as a report of a ·referee in a suit of equity, and that the same should be subject to confirmation, modification, or rejection by the court upon exceptions, in conformity with the court's equity rule 83. The referee, in his report of findings in the law action, found for the plaintiff therein in all respects, and as to the affirmative defenses which ·had been pleaded by the defendant therein he made no finding, for the reason that they presented defenses of fraud and other matters of purely equitable cognizance, which the referee said were not properly pleadable in an action at law, and which the court had the power to consider only on its equity side. But in his report upon the equity suit he found adversely to the complainants therein. To the report of the referee in the law action the plaintiff in error filed exceptions, and one of them was that the referee omitted to find upon the defenses pleaded in the answer; its objection specifying that the issues so presented should have been determined in the law action, whether involved in the equity suit or not. The court below affirmed the findings and conclusions of law of the referee.

Morrison, Dunne & Brobeck and J. J. Dunne, all of San Francisco, Cal., for plaintiff in error.

J. R. Pringle and McCutchen, Olney & Willard, all of San Francisco, Cal., for defendants in error.

Before GILBERT, Circuit Judge, and WOLVERTON and DIETRICH, District Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The assignments of error on which the plaintiff in error relies all present in varying forms the question whether the referee and the court below erred in holding the affirmative defense of the plaintiff in error not cognizable in the action at law. The decision of that question depends upon the nature of the allegations contained in that defense. The following is the substance of them:

In 1902, the Standard Portland Cement Company, controlled by Dingee and Bachman, was engaged in manufacturing cement at Napa Junction, Cal. In 1903 the Western Fuel Company, of which John L. Howard was the president, became the selling agent of the output of the Standard Company. Thereafter Dingee and Bachman organized the Santa ·Cruz Portland Cement Company, and that company also made the Western Fuel Company its sales agent, to sell on commission. In 1906 the Western Fuel Company turned its agency over to the Western Building Material· Company, a subsidiary corpo-

ration which it had organized, and the stock of which it owned. Thereafter Howard suggested to Dingee and Bachman that they engage in manufacturing cement on Puget Sound. In 1906 Dingee and Bachman formed the Northwestern Portland Cement Company to own and conduct a plant at Kendall near Puget Sound, and they took the necessary steps to authorize the issuance of the bonds of that company to raise money with which to construct the plant. The bonds were offered for sale in January, 1907, and with each bond sold by the company, there went to the purchaser an equivalent amount in par value of its stock. A number of these sales were made through Howard. The purchasers paid cash for the bonds at par, and received the accompanying shares of stock. For his services in promoting the enterprise, Dingee and Bachman issued to Howard 9,000 shares of the stock, out of which Howard gave stock to those who had purchased bonds through him, in an amount equal to the par value of the bonds, and he gave a considerable portion of his stock to Evans. In February, 1907, the plaintiff in error herein was organized, substituting in its name the word "Corporation" for the word "Company" as theretofore used. It took over all the properties and liabilities of the former company, and the Standard Company ceased to exist.

The answer alleges that $295,000 was realized upon the sale of the bonds, that it was not expended upon the property of the Northwestern Company, but that the greater portion thereof was diverted by Dingee and Bachman to their other enterprises in which Howard was also interested, and that the construction and equipment of the plant of the Northwestern Company ceased, and its bonds on May 5, 1908, and ever since have been and are without market value; that the purchasers of the bonds became dissatisfied with the action of Dingee and Bachman, and caused the books of the Northwestern Company to be investigated, whereby they became aware of the diversion of the funds and of the cessation of the construction and equipment of the plant, and they demanded that Dingee, Bachman, and Howard either retire the bonds or purchase the bonds and stock; that thereupon Dingee, as president, and Bachman, as vice president, of both the Northwestern Company and the plaintiff in error, in disregard of their duties as such officers, and conspiring with Howard, the representative and agent of the bondholders of the Northwestern Company, agreed to cause the plaintiff in error to execute its promissory notes for the purpose of paying said bondholders the face value of their bonds; that thereupon, for the purpose of carrying out said conspiracy, Dingee and Bachman caused a special meeting of the board of directors of the plaintiff in error to be held on May 5, 1908, at which but three members of the board appeared, and that at said meeting a resolution was passed, authorizing the purchase of the said bonds and the execution of the said notes therefor; that Howard, Dingee, and Bachman knew at that time that the bonds and shares of the Northwestern Company were greatly depreciated in value and of no market value, and that said transaction was a fraud upon the plaintiff in error and its stockholders; that the plaintiff in error never received any of said bonds or stock, but the same were delivered to

the Northwestern Company and placed among its assets. In brief, the substance of the affirmative defenses is, first, that the sale of the bonds and stock and the execution of the notes therefor were fraudulently procured, and that the whole transaction was the outcome of a fraudulent conspiracy between Howard, Dingee, and Bachman to foist upon the plaintiff in error worthless bonds and stocks of a corporation in which it had no interest, and for which bonds it was to pay the full par value; and, second, that although the resolution of the board of directors of the plaintiff in error authorizing the transaction was adopted by the requisite number to constitute a quorum, Dingee, owing to his personal interests adverse to the corporation, was disqualified to act as a director, and without his presence there was not a quorum.

The matter so pleaded requires the aid of a court of equity to give it effect, and is not available as a defense in an action at law in a federal court. The facts alleged do not show that the notes were not executed by the corporation, or that the execution thereof was procured by any trick or fraud, so as to render them void, and thus present a defense that might be made under a plea of non est factum. They show that the notes were executed understandingly and intentionally, but that the assent of the plaintiff in error to the execution of the same was procured by fraud and deceit, and that the action of one of the officers of the plaintiff in error was influenced by fraudulent motives. These allegations, if true, present equitable defenses. The distinction between these two classes of defenses is clear and is well established by the decisions. George et al. v. Tate, 102 U. S. 564, 26 L. Ed. 232; Burnes v. Scott, 117 U. S. 582, 6 Sup. Ct. 865, 29 L. Ed. 991; Hill v. Northern Pac. Ry. Co., 113 Fed. 914, 51 C. C. A. 544; Levi v. Mathews, 145 Fed. 152, 76 C. C. A. 122; Heck v. Missouri Pac. Ry. Co. (C. C.) 147 Fed. 775; Pac. Mut. Ins. Co. v. Webb, 157 Fed. 155, 84 C. C. A. 603, 13 Ann. Cas. 752; Cook v. Fidelity & Deposit Co., 167 Fed. 95, 92 C. C. A. 547; Union Pac. R. Co. v. Whitney, 198 Fed. 784, 117 C. C. A. 392. In George et al. v. Tate, it was said:

"It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give"—citing Hartshorn v. Day, 19 How. 211, 15 L. Ed. 605.

[2] Nor can jurisdiction of such a defense be conferred upon a court of law by waiver or consent of parties. Thompson v. Railroad Companies, 6 Wall. 134, 18 L. Ed. 765; Lewis v. Cocks, 23 Wall. 466, 23 L. Ed. 70; Oelrichs v. Spain, 15 Wall. 211, 21 L. Ed. 43.

The judgment is affirmed.