VAN SLYKE v. ROOKS.

1. TRIAL—ISSUE—AFFIDAVIT OF MERITS—FILING NUNC PRO TUNC.

In assumpsit on a promissory note, the defendants, who had pleaded special defenses to the action, were properly allowed, after plaintiff had demanded an inquest, and on the day set for trial, to file an affidavit of merits *nunc pro tunc* and to present their evidence: the action of the court was discretionary.

2. BILLS AND NOTES—HOLDER IN DUE COURSE—EVIDENCE.

Neither suspicions nor gross negligence on the part of a holder of negotiable paper will affect his right, unless the suspicion or circumstances amount to bad faith: knowledge short of bad faith will not amount to notice. And where the testimony of the plaintiff's good faith is undisputed, it is the duty of the court to so charge the jury.

3. SAME—FRAUD IN INCEPTION—BONA FIDE HOLDER.

Makers of a promissory note who had an opportunity to inspect the paper when they signed it, but supposed that they were signing an agreement to form an association to purchase the horse for which the note was given, were liable, in an action on the instrument, if the jury found that the fraudulent conduct of the person who procured their signatures did not mislead them, or if their negli-

gence in signing the notes was such that they should be required to suffer rather than an innocent holder. As to a defendant who signed the notes without looking at them or being misled as to the purport of the papers by the payee, a verdict should have been directed in favor of the plaintiff.

4. SAME—FORGERY—JOINT MAKERS.

Although one of the makers denied signing the instrument, which plaintiff's proofs showed that he executed, the other joint makers were not relieved of responsibility.

5. SAME—CHARGE—EVIDENCE, PREPONDERANCE OF.

In charging the jury on the question of the burden of proof, no greater weight of evidence ought to be required than an ordinary preponderance, the use of the words "fair preponderance" while not reversible error might well be avoided. There is no rule of law which adopts any sliding scale of belief in civil actions.

Error to Ottawa; Cross, J. Submitted April 17, 1914. (Docket No. 54.) Decided June 1, 1914.

Assumpsit by Charles E. Van Slyke against W. J. Rooks and others upon a promissory note. Judgment for plaintiff. Defendants bring error. Reversed.

*F. J. Northway* and *Odell Chapman,* for appellant.

*Diekema, Kollen & Ten Cate* (*Jarrett N. Clark,* of counsel), for appellees.

STONE, J. This is an action of assumpsit commenced in the circuit court for the county of Ottawa. The plaintiff filed a declaration upon the common counts in assumpsit, and gave notice that, on the trial, he would, under the money counts, give in evidence a certain promissory note, a copy of which was attached to the declaration, and which reads as follows:

"600.00          ZEELAND, MICH., Apr. 11, 1912.
"On May 1, 1913, after date, for value received, I promise to pay Calkins & Augsbury, or order, six hun-

dred dollars at the Zeeland State Bank, with interest at 6 per cent. per annum, interest payable annually.

"W. J. ROOKS.                    ALBERT BEMENT.
"M. P. NEENHUIS.                 JOHN VAN STRATT.
"JOHN C. WEBEKE.                 WILLIAM ZONNEBELT.
"GERRIT SCHUT.                   ARTHUR WIGGERS.
"EGBERT J. BOES.                 DANIEL D. MEEUSEN."
"ALFRED VAN VORST.

This note bore on its back the following blank indorsement: "Calkins & Augsbury."

All of the defendants appeared and pleaded the general issue, under which they gave notice:

(1) That the note, copy of which was attached to the declaration, was not the note of said defendants, and that, if the signatures of any of them were attached to said note, the same had been obtained by fraud, deceit, and misrepresentation, and that there was fraud *in esse contractus*, and therefore they were not liable thereon; (2) that said plaintiff was not a holder in due course, and that there was a total want or failure of consideration for said note, said defendants never having received consideration for said note; (3) that they were discharged from all liability on said instrument by reason of material alterations made thereon without the consent of all of the parties liable thereon; (4) that Alfred Van Vorst, one of the said defendants, was an infant at the time the note was purported to have been given, April 11, 1912; (5) that Albert Bement, being one of the defendants whose name is purported to be attached to said note, never signed or executed the said note, as will more fully appear by affidavit denying said execution thereto attached.

Accompanying the plea was the affidavit of Albert Bement denying the execution of the note, and denying that he ever authorized any one to sign his name to said note.

The case, being at issue, was noticed for trial by plaintiff's attorney for the August term of 1913, which notice also stated that it was plaintiff's intention that "an inquest will be taken thereon."

The record shows that the case was set down for trial for September 4, 1913, at which time the parties appeared in court by their respective attorneys, and the plaintiff's counsel claimed the right to an inquest under Circuit Court Rule 14; no affidavit of merits having been filed and served by defendants before the first day of the term. It was claimed by defendants' attorneys that they had noticed the case for trial five days before the notice of trial was given by the plaintiff, and that both parties had demanded a jury. Thereupon defendants' attorneys asked leave to file an affidavit of merits *nunc pro tunc* as of date before the first day of the term. This motion was granted by the circuit judge, and an affidavit of merits, was accordingly filed *nunc pro tunc*, to which ruling of the court plaintiff's counsel duly excepted.

It appeared upon the trial that the plaintiff was the purchaser of the note, a copy of which has been given, and also another note of like date and amount, due May 1, 1914, bearing the same rate of interest, and purporting to be signed by all of the defendants, and indorsed by Calkins & Augsbury. These notes are known and refererd to in the record as Exhibits A and B.

The plaintiff was sworn as a witness in his own behalf, and testified that he purchased both of said notes of the payees, Calkins & Augsbury, and gave therefor $1,000, which was evidenced by a check bearing date April 29, 1913, payable to Calkins & Augsbury, and which check appeared to have been duly paid by the bank upon which it was drawn on April 29, 1913.

The plaintiff gave testimony that he was a *bona fide* holder of these notes; that while he actually purchased them on the 29th day of April, 1913, for the sum of $1,000, that he had agreed to purchase the same from the payees some weeks prior thereto; that he was informed by the payees that the notes in question had

been given to the payees upon the sale of a horse by them to the defendants. Without setting forth in full here the testimony in this record, a careful perusal of the same has satisfied us that the undisputed evidence in the case shows that the plaintiff was a *bona fide* purchaser of these notes before maturity for value, and that the trial court should have so charged the jury.

Upon the trial of the case each one of the defendants, except the defendant John C. Webeke, was examined as a witness. Their testimony tended to show that they had had negotiations with the payees for the purchase of a stallion. The witness Bement testified positively that he had never signed either of the notes, nor had he authorized any one to sign the same in his behalf. It appearing upon the trial that the defendant Van Vorst was an infant at the time the notes were executed, upon motion of plaintiff's counsel, the cause was discontinued as to him. The other defendants, with the exception above noted, all testified that their names attached to the said notes were their genuine signatures, but that they did not know that they were signing promissory notes, and that they had signed the same supposing that they were signing an agreement to form an association for the purchase of said horse. In nearly every instance the defendants testified that they had opportunity to inspect the papers when they signed them; that they read writing in the English language readily; but that they relied upon the representations of one Martin that the papers they were signing had to do simply with an agreement to form said association. In one or two instances, especially in that of defendant Rooks, it was claimed that the signatures of the defendants had been obtained by the fraudulent covering up of the written portion of the instruments which were signed, and that thereby they were deceived.

The trial of the case resulted in a verdict for the defendants of no cause of action, and the plaintiff has brought the case here for review, and has assigned many errors upon the record. Among the errors claimed are the following:

(1) That the court erred in permitting the defendants to file an affidavit of merits *nunc pro tunc;* (2) that the court erred in submitting to the jury the question whether or not the plaintiff was a *bona fide* holder of the note sued upon; (3) that the court did not instruct the jury properly or fully enough upon the question of negligence on the part of the defendants in signing the said note; (4) that the court erred in instructing the jury that, in order to recover, they must find by a "fair preponderance" of the evidence that the plaintiff was a *bona fide* holder of this note for value, and that defendants signed the note knowing that they were signing a note; the instruction having been as follows:

"The burden of proof in this case is upon the plaintiff to establish his case, and every essential element thereof, by a fair preponderance of the evidence; and, before the plaintiff is entitled to recover, he must establish, by a fair preponderance of the evidence, all the essential elements of his case.

"You are instructed that, if you find by a fair preponderance of the evidence that the plaintiff is a *bona fide* holder of this note, for value, and that the defendants signed the note knowing that they were signing a note, then you will render a verdict for the plaintiff for the amount of the note, and interest at 6 per cent. from April 11, 1912, to date."

In many other portions of the charge the term "fair preponderance of the evidence" was used by the court when speaking of the weight of the evidence necessary for plaintiff's recovery.

1. It is claimed by plaintiff's counsel that the court erred in permitting defendants to file an affidavit of merits upon the trial *nunc pro tunc.*

Circuit Court Rule 14 has, in substance, been a rule of the circuit courts for many years. It is the contention of plaintiff that the trial court had no dis-

cretion in this matter, and no power to permit the filing of the affidavit of merits. The evident purpose of the rule is to relieve the court from spending its time in the trial of actions on promissory notes, etc., unless the defendant shall make and file an affidavit of merits.

In *Wells* v. *Booth*, 35 Mich. 424, this court said that in case a defective affidavit of merits had been filed in good faith, the proper practice was to permit an amendment thereof.

An examination of the case of *Bitzer* v. *Wagar*, 83 Mich. 223 (47 N. W. 210), will show that this court has recognized the power of the circuit court to permit the filing of an affidavit of merits later than the time prescribed in the rule, in its discretion. It cannot be reasonably said that this rule has any greater force than a statute. An examination of our decisions will show that we have frequently recognized the power of the circuit court to enter rules to plead *nunc pro tunc*, also notices of request for estimation of value of premises under the ejectment statute, etc. *Coe* v. *Hinkley*, 109 Mich. 608 (67 N. W. 915); *Goebel Brewing Co.* v. *Medbury*, 153 Mich. 49 (116 N. W. 543); *Brooks* v. *Fairchild*, 36 Mich. 231.

We cannot say there was an abuse of discretion on the part of the circuit court in permitting the filing of this affidavit, especially where it appears, as it does here, that there was no claim of surprise or unpreparedness on the part of the plaintiff, nor was any continuance asked for. Under such circumstances, we think the discretion reposed in the court was not abused, and that it was not error to grant the motion of defendants.

2. As we have already said, we are of the opinion that, under the evidence, the trial court should have charged the jury that the plaintiff was a *bona fide*

holder of the note sued upon. The law in this State is well settled upon this subject. For the decisions of this court we need only refer to the recent case of *Hakes* v. *Thayer,* 165 Mich. 476, at page 488 (131 N. W. 174), (where the authorities are collected), in which this court said:

"It was at one time held that circumstances which ought to excite the suspicions of a prudent and careful man constituted notice and put the purchaser upon inquiry. This rule has been abandoned, and it is the almost universal rule now that neither suspicions, nor even gross negligence on the part of a taker will affect his right, unless the suspicions or circumstances amount to bad faith. Suspicions or even knowledge of facts which will fall short of bad faith do not amount to notice"—citing cases.

Section 58 of our negotiable instruments act (Act No. 265, Pub. Acts 1905), reads as follows:

"To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

We find nothing in the record, either as to the time when the purchase was made by the plaintiff, or the amount which he paid for the notes, to indicate any evidence of bad faith. Within the authorities it must be said that the evidence shows that the plaintiff took the notes for value. See 1 Daniel on Negotiable Instruments (6th Ed.), §§ 777 to 780. It also appears that the plaintiff acquired the paper in what may be termed the ordinary or usual course of business, by which phrase is meant to describe a transfer according to the usages and customs of commercial transactions. *Id.* § 780.

Where the testimony of the plaintiff's *bona fides* is undisputed, it is the duty of the court to so charge the jury; and that question should not be submitted

to them. *Borden* v. *Clark*, 26 Mich. 410; *Miller* v. *Finley*, 26 Mich. 249 (12 Am. Rep. 306); *Drovers' Nat. Bank* v. *Potvin*, 116 Mich. 474 (74 N. W. 724).

Section 59 of the negotiable instruments act is as follows:

"A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

3. We think it was the duty of the trial court to have charged more fully than it did upon the question of whether the defendants were guilty of negligence in signing the note in question; and in saying this we are well aware of the extent to which this court has gone upon this subject, as indicated by the following cases: *Burson* v. *Huntington*, 21 Mich. 415 (4 Am. Rep. 497); *Gibbs* v. *Linabury*, 22 Mich. 479 (7 Am. Rep. 675); *Anderson* v. *Walter*, 34 Mich. 113; *Soper* v. *Peck*, 51 Mich. 563 (17 N. W. 57); *First Nat. Bank of Sturgis* v. *Deal*, 55 Mich. 592 (22 N. W. 53); *Beard* v. *Hill*, 131 Mich. 246 (90 N. W. 1065); *Standard Portland Cement Corporation* v. *Evans*, 205 Fed. 1, 125 C. C. A. 1.

The doctrine of *Beard* v. *Hill*, *supra*, is that a promissory note, the signature to which was procured by trickery or substitution, or was affixed by another without authority, was void, even in the hands of a *bona fide* holder.

The following may be said to be a fair sample of the testimony of some of the other defendants in the case. Defendant Boes, after testifying to having signed in the little book, referring to the association, said:

"Afterwards I signed some other papers. The name of Egbert J. Boes on Exhibits A and B is my signature. I signed that in Dr. Rooks' office. This Jimmie was present that took care of the horse. That

was all that was present. At that time Martin was out of town. Mr. Augsbury was not present. I did not sign the note in the presence of Mr. Martin or Mr. Augsbury.

"*Q.* What was said to you when you signed this document?

"*A.* He (Jimmie) says: 'They left the notes here. They are all gone at present.' He says: 'And if you want to sign up you can sign up; that is, if they are the notes. He left the papers here.'

"*Q.* What do you mean by that last statement?

"*A.* I don't know that they was notes, you see.

"*Q.* He says papers?

"*A.* He says: 'The papers is right here, if you want to sign them.' I signed them; he had them laying right there on the desk; he took them out of a big envelope and laid them right there on the desk, and I signed them. When I came back from work at noon Dr. Rooks told me he heard these were notes; that is the first I heard about it."

On cross-examination, the witness testified as follows:

"When I signed these notes I did not take them into my possession, only they were lying on the desk. They laid right there, and I had control of them while I signed them. Nobody interfered with my looking at them and examining them as much as I wanted to. I read English, and am 29 years old. I have some education, to about the seventh grade. I read the papers; I read English readily. And the same way with the book; when I signed the book that day, the contract, I had an opportunity, if I wished to, to make such examination as I wanted to, I guess; but I never did it."

In speaking of conduct of this kind, we refer to section 850 of the sixth edition of Daniel on Negotiable Instruments, where that author says:

"The sixth class of cases are those in which the party possesses the ordinary faculties and knowledge, and is betrayed into signing a bill or note by the assurance that it is an instrument of a different kind.

181 Mich.—7.

It is generally agreed that if the party is guilty of any negligence in signing the paper, he is bound; and the act itself, it seems to us, can hardly be committed without negligence. A man has no right to have eyes and see not; or ears and hear not; and while the law should protect those who suffer from the want of the senses in their proper development, or ordinary education to throw the burden of the failure to use them upon innocent third parties. In such cases we should say the act of signing the paper without intending to do so, as a general rule, imported negligence *per se,* and rendered the party liable. A misrepresentation by a total stranger is not sufficient to defeat an action on a promissory note, plainly legible, and assigned before maturity to a holder for value, when the only excuse of the maker is that he was too busy to read the note. If he has full and unrestricted means of ascertaining the true character of the instrument before signing it, but neglecting to avail himself of such means of information, and relying on others' representations, he signs and delivers a negotiable paper, instead of a different paper, which he intended to sign, he cannot be heard to impeach it when it has been passed to a *bona fide* holder. In accordance with this doctrine it was held in Iowa that where one Matting was induced to sign a promissory note under the false representation that it was a contract of agency, respecting a certain patent seeder and cultivator, he was bound to a *bona fide* holder"—citing, *Douglass* v. *Matting,* 29 Iowa, 498 (4 Am. Rep. 238).

In that case it was said:

"The defendant intrusted the one with whom he was dealing with the preparation of the instrument. The instrument as prepared was not what defendant had agreed to sign, but was voluntarily executed by him. The act of the agent was a fraud whereby defendant was induced to make the note, and not the false making of it, which is necessary to constitute forgery. * * * Now it would be manifestly unjust to permit the maker, while admitting the genuineness of his signature, to defeat the note, on the ground that, through his own culpable carelessness while dealing with a stranger, he signed the in-

strument without reading it or attempting to ascertain its true contents. The law will favor, as between the holder and maker in such a case, the more innocent and diligent. The maker had it in his power to protect himself from the fraud, but failed to do so. When the consequences of this act are about to be visited upon him, he seeks to make another bear it, on the ground that he was defrauded through his own gross negligence. * * *

"The rule contended for by appellee would tend to destroy all confidence in commercial paper. It is better that defendant, and others who so carelessly affix their names to paper, the contents of which are unknown to them, should suffer from the fraud which their recklessness invites, than that the character of commercial paper should be impaired, and the business of the country thus interfered with and unsettled."

See the many cases cited by the above-named author in the notes to the above-quoted text.

Under the undisputed evidence in the case, the court should have directed a verdict for the plaintiff against the defendant John C. Webeke; and, in our opinion, the undisputed testimony of the defendant Boes shows him to have been guilty of such gross negligence that the court might well have directed a verdict against him, and such others of the defendants as did not claim that they were misled by the actual active fraudulent conduct of the persons procuring their signatures; and, as to all of those latter defendants, the court should have charged the jury fully upon the rule of negligence to which we have referred, and their attention should have been called to the maxim that, when one of two innocent persons must suffer by the acts of a third, the loss must be borne by the person who enables such third person to occasion it.

The defendant Albert Bement testified that he had never signed the note at all. This testimony was denied by the witness Martin. But, even had the jury

found that the note was a forgery as to defendant Bement, that would not have prevented the recovery against the other defendants under the authority of *First Nat. Bank of Durand* v. *Shaw,* 157 Mich. 192 (121 N. W. 809, 133 Am. St. Rep. 342), where this court held that the forgery of a part of the signature on a promissory note does not invalidate the instrument, as to the genuine signatures, in the hands of the holder in due course.

4. The criticism of counsel for appellant here is upon the use of the term "fair preponderance." This court has recently had occasion to collect the decisions in this State upon this subject. See *Silverstone* v. *Assurance Corporation,* 176 Mich. 525-533 (142 N. W. 776), where the language of this court in an early case is quoted to this effect:

"There is no rule of law which adopts any sliding scale of belief in civil controversies."

The language used in the instant case is not as objectionable as in the cases cited; but, as the case must go back for a new trial, we should say that we think it more prudent for the trial court, in charging a jury in a civil case, to not require a greater weight of proof than the ordinary preponderance of evidence. We should not feel like reversing the case on this ground. Other questions discussed are not likely to arise upon another trial.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.